**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
CAUSE OF ACTION INSTITUTE              )
                                                    )
     Plaintiff,                              )
                                                    )
v.                                                  )          Case No. 16-cv-2354 (KBJ)
                                                    )
INTERNAL REVENUE SERVICE,         )
                                                    )
     Defendant.                           )
_____)


## <u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

  I.      The Records Sought Are Agency Records under the FOIA ........................................... 5

    A.    Congressional Intent to Retain Control over Records Must Be Affirmatively and
Expressly Manifest Prior to their Creation or Transfer ................................................... 7

    B.    The JCT Has Not Manifested Sufficient Intent to Retain Control of All the
Records Potentially Responsive to the CoA Institute FOIA Requests ......................... 12

        1.    The JCT Exhibits in Support of the Motion to Dismiss Do Not Establish the
Requisite Intent ...................................................................................................... 13

        2.    The Landes Declaration Is Insufficient to Indicate the Requisite Intent ................... 15

    C.    The CoA Institute FOIA Requests Seek Agency Records Controlled by the IRS ......... 17

        1.    The First Request ..................................................................................................... 17

        2.    The Second Request ................................................................................................ 20

  II.     The Records Sought Are Not Congressionally Privileged ........................................... 21

CONCLUSION..................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Department of Defense,*
    580 F. Supp. 74 (D.D.C. 1983) ........................................................................... 22

*American Civil Liberties Union v. Central Intelligence Agency,*
    823 F.3d 655 (D.C. Cir. 2016) ........................................................................ *passim*

*American National Insurance Co. v. Federal Deposit Insurance Corp.,*
    642 F.3d 1137 (D.C. Cir. 2011) ............................................................................ 4

*Burka v. Department of Health & Human Services,*
    87 F.3d 508 (D.C. Cir. 1996) ........................................................................... 6, 7

*Department of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ......................................................................... 4, 5, 6, 12

*Doe v. McMillan,*
    412 U.S. 306 (1973) ........................................................................................ 22

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975) ........................................................................................ 22

*Goland v. Central Intelligence Agency,*
    607 F.2d 339 (D.C. Cir. 1978) ........................................................................ 7, 8

*Gravel v. United States,*
    408 U.S. 606 (1972) ........................................................................................ 22

*Holy Spirit Association for the Unification of World Christianity v.*
    *Central Intelligence Agency,* 558 F. Supp. 41 (D.D.C. 1983) ............................... 23

*Holy Spirit Association for the Unification of World Christianity v.*
    *Central Intelligence Agency,* 636 F.2d 838 (D.C. Cir. 1980) ......................... *passim*

*Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Administration,*
    402 F.3d 1249 (D.C. Cir. 2005) ............................................................................ 5

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) .......................................................................................... 5

*McSurely v. McClellan,*
    553 F.2d 1277 (D.C. Cir. 1976) ......................................................................... 22

*National Archives & Records Administration v. Favish*,
    541 U.S. 157 (2004) ............................................................................................................5

*Paisley v. Central Intelligence Agency*,
    712 F.2d 686 (D.C. Cir. 1983) ...................................................................................... *passim*

*Powell v. McCormack*,
    395 U.S. 486 (1969) ..........................................................................................................22

*Public Citizen v. Department of State*,
    276 F.3d 634 (D.C. Cir. 2002) ............................................................................................3

*Quick v. Department of Commerce*,
    775 F. Supp. 2d 174 (D.D.C. 2011) ....................................................................................5

*Scolaro v. D.C. Board of Elections & Ethics*,
    104 F. Supp. 2d 18 (D.D.C. 2000) ......................................................................................4

*U.S. Ecology, Inc. v. Department of the Interior*,
    231 F.3d 20 (D.C. Cir. 2000) ..............................................................................................4

*United States v. Brewster*,
    408 U.S. 501 (1972) ..........................................................................................................22

*United We Stand America, Inc. v. Internal Revenue Service*,
    359 F.3d 595 (D.C. Cir. 2004) ...................................................................................... *passim*

**Constitution**

U.S. Const. art. I, § 6, cl. 1 ....................................................................................................22

**Statutes**

5 U.S.C. § 552(a)(3) ...............................................................................................................5

26 U.S.C. § 6103(p)(3)(B) .....................................................................................................19

26 U.S.C. § 6103(p)(3)(C) .....................................................................................................20

26 U.S.C. § 8022(2) ...............................................................................................................21

26 U.S.C. § 8022(3) ...............................................................................................................21

**Regulations and Agency Manuals**

I.R.M. § 11.3.13.5.4.2 ............................................................................................................13

I.R.M. § 11.3.13.5.4.4 .......................................................................................................14, 17

I.R.M. § 35.5.4.9 ...................................................................................................................1

**Other Authorities**

U.S. J. Comm. on Tax., Disclosure Report for Public Inspection Pursuant to
     Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2009 .................................20

## INTRODUCTION

In December 2015, Defendant Internal Revenue Service ("IRS") issued new guidance concerning the treatment of records related to the United States Congress Joint Committee on Taxation ("JCT"). That guidance, which has since been incorporated into the IRS Chief Counsel Directives Manual ("CCDM") and the Internal Revenue Manual ("IRM"), claims to codify longstanding IRS policy and practice. In truth, it prescribes an overbroad and unjustified approach to distinguishing between "agency records" and "congressional records" for purposes of the Freedom of Information Act ("FOIA"). The result of this guidance, which the Defendant relies on to deny processing of the FOIA requests at issue in this proceeding, is to sweep a broad range of agency records, which should be subject to the FOIA, into an exempt category of congressional records.

At issue in this case are two FOIA requests submitted by Plaintiff Cause of Action Institute ("CoA Institute"). The requests seek IRS records for which the JCT has not manifested specific and clear intent to control and which, accordingly, must be produced under the FOIA.

## STATEMENT OF FACTS

On or about December 18, 2015, the IRS Office of Chief Counsel introduced a provision to the CCDM requiring the IRS to treat nearly all JCT-related records as "congressional records" not subject to the FOIA. *See* Compl. Ex. 1 (CCDM Notice CC-2016-003); *see also* I.R.M. § 35.5.4.9 ("Joint Committee on Taxation – FOIA Requests"). Although the IRS alleged that this guidance "codifies longstanding agency practice on the treatment of JCT documents," Compl. Ex. 1 at 1, the guidance in fact contradicts established case law concerning the definition of an "agency record" under the FOIA.

1

By letters, both dated June 22, 2016, CoA Institute submitted two FOIA requests to the

IRS.  The first of these requests sought access to five categories of records "for the time period

of January 21, 2009 to the present," namely:

1.  All records transmitted between the IRS and the JCT, and all communications concerning such transmissions, which do not contain a legend restricting their use or dissemination.

2.  All communications between IRS Privacy, Governmental Liaison, and Disclosure ("PGLD") personnel, as well as other affected IRS functions or components, and the JCT concerning any determination whether to disclose or withhold IRS records that were the subject of a JCT oversight inquiry.

3.  All records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT in response to a general oversight inquiry.

4.  All records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT as part of IRS general oversight responsibilities, but which were not provided in response to a JCT inquiry.

5.  All records created by or originating at the JCT but which were provided to the IRS and are maintained by the IRS in any agency records system, including but not limited to the E-Trak Communications and Correspondence tracking system.

Compl. ¶ 7; Compl. Ex. 2 at 2 ("First Request").[1]  To clarify the intended scope of its requests

and that it was not seeking records protected from disclosure by statute, CoA Institute expressly

excluded "any records concerning 26 U.S.C. §§ 6045, 6405, and 8022(2)."  Compl. ¶ 8; Compl.

Ex 2 at 2.

The second of the June 22, 2016 FOIA requests sought "[a]ll communications between

the IRS and the JCT" containing any one of thirty-eight (38) search terms.  Compl. ¶ 9; Compl.

Ex. 3 at 2 ("Second Request").  Those terms included the following:

---

[1] CoA Institute adopts the same short-hand references that Defendant devised in its motion to dismiss.

> "@irscounsel.treas.gov," "@irs.gov," "6103," "6103(g)," "6103(c)," "6103(p)," "6103(h)," "6103(i)," "Cause of Action," "detailee," "DOJ," "Justice," "@usdoj.gov," "@who.eop.gov," "White House," "tax checks," "Julie Schwartz," "A M Gulas," "Norah Bringer," "Andrew Strelka," "equities," "White House counsel," "avoid," "evade," "301.6103(c)-1," "information collection," "Paperwork Reduction," "Privacy Act," "system of records," "Federal Records Act," "7805(c)," "602.101," "11.3.31-1," "Form 8821," "Form 1040," "Form 4416," "Form 13362," or "Form 13775."

Compl. Ex. 3 at 2.  The time period for the Second Request was "January 21, 2009 to the present,"[2] and CoA Institute similarly excluded any records concerning 26 U.S.C. §§ 6045, 6405, and 8022(2).  Compl. Ex. 3 at 2.

The IRS received CoA Institute's FOIA requests on June 28, 2016 and assigned them tracking numbers F16180-0047 and F16180-0049, respectively.  Compl. ¶ 13; Compl. Exs. 4–5.  By letter, dated August 8, 2016, the IRS provided its final response to both requests.  Compl. ¶ 17; Compl. Ex. 6.  The agency stated that "[a]ny records responsive to either of [CoA Institute's] requests, to the extent they exist, are non-agency Congressional records that are not subject to the FOIA."  Compl. ¶ 17; Compl. Ex. 6 at 1.  The IRS alternatively argued that the CoA Institute requests "would be unreasonably burdensome for the IRS to process" and were therefore invalid.  Compl. ¶ 18; Compl. Ex. 6 at 1–2.  The IRS never issued any determination on CoA Institute's requests for public interest fee waivers and classification as a representative of the news media.  Compl. ¶¶ 12, 14.

By letter, dated September 6, 2016, CoA Institute administratively appealed the IRS adverse determination that the records requested were non-agency congressional records and that

---

[2] In both of its requests, CoA Institute clarified that "the term 'present' should be construed as the date on which the agency begins it search for responsive records," as opposed to the date of receipt of the request.  Compl. ¶ 11; *see generally Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).

the requests were, in the alternative, invalid for being unreasonably burdensome.[3]  Compl. ¶ 19; Compl. Ex. 7.  Specifically, with respect to the former issue, CoA Institute argued that the IRS had failed to provide a "satisfactory demonstration of the requisite congressional intent [for the JCT] to maintain control" of the requested records.  Compl. ¶ 20; Compl. Ex. 7 at 3–4.

On November 22, 2016, the IRS upheld, without explanation, its initial determination that any responsive records, "to the extent they exist, would be non-agency Congressional records."  Compl. ¶ 23; Compl. Exs. 12–13.  CoA Institute thereafter filed the present suit to compel the processing of its requests.

## STANDARD OF REVIEW

In the face of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), CoA Institute bears the burden of establishing jurisdiction.  *See U.S. Ecology, Inc. v. Dep't of the Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  Nevertheless, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. Fed. Deposit Insurance Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted).  With respect to the particular question of whether a record is subject to the FOIA, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records[.]'"  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (discussing burden in context of determining subject matter jurisdiction).  The Court also may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18,

---

[3] Defendant did not address the question of request validity in its motion to dismiss, focusing instead only on the definition of a "congressional record."  CoA Institute contends that its requests were proper under the FOIA and complied with IRS FOIA regulations, as set forth in its administrative appeal.  *See* Compl. Ex. 7.

22 (D.D.C. 2000) (citations omitted); *see Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

There is no dispute that the FOIA provides a judicially-enforceable right of access to records of the Executive Branch.  5 U.S.C. § 552(a)(3).  Congress created that right "to introduce transparency into government activities," *Quick v. Dep't of Commerce*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011), and to provide an important "means for citizens to know 'what the Government is up to.'"  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation omitted).  Such a mechanism of public access is particularly vital when records are "'shielded unnecessarily from public view . . . [by] possibly unwilling official hands.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973)).

This Court's jurisdiction to enforce the rights afforded by the FOIA is "dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"  *Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger v. Reporters Comm. for the Freedom of the Press*, 445 U.S. 136, 150 (1980)).  In this proceeding, Defendant contests only the last of these three elements. *See* Def.'s Mem. in Supp. of the IRS's Mot. to Dismiss at 13–14, Feb. 21, 2017, ECF No. 11-1 [hereinafter "Def.'s Mem."].  As set forth below, the records sought by CoA Institute are "agency records" under the control of the IRS.  Moreover, they are not congressionally privileged.  The Court accordingly should deny the motion to dismiss and order Defendant to process and produce the records responsive to the FOIA requests at issue in this proceeding.

## I.    THE RECORDS SOUGHT ARE AGENCY RECORDS UNDER THE FOIA

Defendant argues that this case must be dismissed because the FOIA requests at issue "seek communications between the JCT and the IRS in the course of JCT's official business or

seek documents created by the IRS in response to such communications."  Def.'s Mem. at 14.

The mere fact that a record relates to the JCT, was created by the JCT, or was transmitted by the

IRS to the JCT, however, does not by itself render it a congressional record outside the scope of

the FOIA.  Its status as an "agency record" and its availability under the FOIA is dependent upon

two factors.  First, the IRS must have "'either create[d] or obtain[ed]'" the record.[4]  *Tax*

*Analysts*, 492 U.S. at 144 (citation omitted).  Second, the IRS must have "control" of the record

"at the time [a] FOIA request is made."  *Id.* at 145.

> "Control" is analyzed through the four-factor *Burka* test, which examines:
>
> (1) the intent of the document's creator to retain or relinquish control over the
> records; (2) the ability of the agency to use and dispose of the record as it sees fit;
> (3) the extent to which agency personnel have read or relied upon the document;
> and (4) the degree to which the document was integrated into the agency's record
> systems of files.

*Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citation omitted).

With purported congressional records, the first two *Burka* factors are dispositive, as they speak to

"whether Congress manifested a clear intent to control the document."  *United We Stand Am.,*

*Inc. v. Internal Revenue Serv.*, 359 F.3d 595, 597 (D.C. Cir. 2004); *see also Paisley v. Cent.*

*Intelligence Agency*, 712 F.2d 686, 693 n.30 (D.C. Cir. 1983) ("[E]xplicit focus on Congress'

intent to control (and not on the agency's) reflects those special policy considerations which

counsel in favor of according due deference to Congress' *affirmatively expressed intent* to

control its own documents.") (emphasis added), *vacated in part on other grounds*, 724 F.2d 201

(D.C. Cir. 1984).

---

[4] Defendant does not deny that it created or obtained all potentially responsive records at issue.

### A.     Congressional Intent to Retain Control over Records Must Be Affirmatively and Expressly Manifest Prior to their Creation or Transfer

For the records at issue in this case to be congressional records, there must be, by the JCT, an "affirmatively expressed intent to control its own documents." *Paisley*, 712 F.2d at 693, 693 n.30. The JCT also must have provided "*contemporaneous* and *specific* instructions" limiting Defendant's future use or disclosure of the records, *id.* at 694 (emphasis in original); *see also Holy Spirit Ass'n for the Unification of World Christianity v. Cent. Intelligence Agency*, 636 F.2d 838, 843 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982), or instructions particular to their treatment prior to their creation. *See Am. Civil Liberties Union v. Cent. Intelligence Agency*, 823 F.3d 655, 666–67 (D.C. Cir. 2016), *petition for cert. filed*, No. 16-629 (Nov. 14, 2016). Together, these requirements address the first two *Burka* factors: Congress's intent to retain or relinquish control, and the ability of the IRS to use or dispose of records as it sees fit.

The D.C. Circuit has held that, "[i]n the absence of any manifest indications that Congress intended to exert control over documents in an agency's possession," a court should conclude that the documents are agency records subject to the FOIA. *Paisley*, 712 F.2d at 692–93. If sufficient indicia suggest that Congress intended to retain some control, responsive agency records may still be disclosed after being redacted to protect the substance of any confidential congressional inquiries. *United We Stand*, 359 F.3d at 601 (citing *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984)); *see Holy Spirit*, 636 F.2d at 841 n.3.

In this respect, Defendant's characterization of relevant D.C. Circuit case law is incomplete. *See* Def.'s Mem. at 11–14. The decisions leading up to *United We Stand*—all of which pre-date *Burka*—show a developing appreciation that congressional intent must be indicated in a specific, non-generalized manner. In the first of these cases, *Goland v. Central*

7

*Intelligence Agency*, a requester sought a "reproduction of a stenographic transcript" of a congressional hearing.  607 F.2d 339, 347 (D.C. Cir. 1978).  That hearing had been conducted in closed session, and the CIA's copy of the transcript was marked "Secret," apparently "at the time [it] was made."  *Id.*  The court concluded that the congressionally-created transcript was not subject to the FOIA because of "the circumstances attending [its] generation and the conditions attached to its possession by the CIA."  *Id.*  Contrary to Defendant's contentions, therefore, the D.C. Circuit has long recognized the importance of a specific and pre-established manifestation of congressional intent to retain control of records later possessed by Executive Branch agencies.

In *Holy Spirit Association v. Central Intelligence Agency*, the court was faced with two types of records, both of which are at issue in this case: records generated by Congress and transmitted to an agency, and agency-created records transmitted to Congress.  With respect to the former, the court held that the exemption of congressional records could "be lost" if Congress did not appropriately "designate[] the documents as falling within congressional control."  636 F.2d at 841.  Thus, records about "'sensitive investigations concerning Korean-American relations'" were not exempt simply because of some "general characterization" that they were confidential.  *Id.*  The court determined that a non-specific affidavit discussing the conditions under which the records were transferred was insufficient to have entirely restricted the CIA's ability to use and dispose of the records as it saw fit.  *Id.* at 841–42.[5]  Further, the court rejected a letter from the Clerk of the House of Representatives, "which objected to the release of any portion of the . . . documents," but which was written "as a result of the [plaintiff's] FOIA

---

[5] The court contrasted the indicia of intent surrounding these records to the transfer of "three sealed cartons of additional congressional documents," which were "accompanied by a memorandum from the House Committee on International Relations" indicating Congress's retained jurisdiction, explaining that the documents were classified, and restricting access to their contents.  *Holy Spirit*, 636 F.2d at 842.  The subsequent treatment of the records was also telling: the agency never "opened the sealed cartons, [did] not know their contents, and maintain[ed] them for the express purpose of safekeeping."  *Id.*

request and this litigation long after the actual transfer [of records] to the CIA." *Id.* at 842 (citations omitted); *see id.* ("We do not consider the letter sufficient evidence that Congress forwarded the documents to the Agency only 'for a limited purpose and on condition of secrecy.'") (citing *Goland*, 607 F.2d at 348 n.48, and *Halperin v. Dep't of State*, 565 F.2d 699, 705 (D.C. Cir. 1977)).

With respect to the latter category—documents created by the CIA and sent to Congress in response to an official inquiry—the court found that the records "lost their exemption as congressional records when Congress failed to retain control" upon returning them to the agency without any further instructions. *Id.* at 843.

Although the *Holy Spirit* court stopped short of requiring Congress to intend to control and to restrict an agency's use of records *contemporaneous* with any transfer (or, by extension, any request to create records), *id.* at 842, the D.C. Circuit explicitly adopted that approach in *Paisley v. Central Intelligence Agency*. 712 F.2d at 694 ("The Government points to no *contemporaneous* and *specific* instructions from the SSCI to the agencies limiting either the use or disclosure of the documents.") (emphasis in original). The records at issue in *Paisley* included agency phone logs summarizing conversations between the CIA and the Senate Select Committee on Intelligence ("SSCI"), agency memoranda detailing meetings with the SSCI, and requests for information from the SSCI and the CIA's responses thereto. *Id.* at 690.

The *Paisley* court found that there were "no external indicia of control or confidentiality on the faces of the [congressionally-generated] documents," unlike other records that had been stamped "secret." *Id.* at 694. The court also rejected the CIA's attempt to rely on a "'pre-existing agreement'" that "any and all documents exchanged between the CIA and the SSCI would require review and approval by the [SSCI] prior to public disclosure," *id.*, and post-hoc

agency letters indicating the CIA's belief that the records were "congressional in nature." *Id.* at 695 (citing *Holy Spirit*, 636 F.2d at 842). In addition, the court rejected reliance on an earlier letter from the SSCI that was "too general and sweeping to provide sufficient proof, when standing alone, of a specific intent to transfer" the particular records at issue "for a 'limited purpose and on condition of secrecy.'" *Id.* (citing *Goland*, 607 F.2d at 348 n.48).

As for agency-created records, the court found the "connection [with the SSCI] is far too insubstantial and commonplace to establish congressional control," especially because it could lead to exempting "a broad array of materials otherwise clearly categorizable as agency records, thereby undermining the spirit of broad disclosure that animates the [FOIA]." *Id.* at 696. Absent "strong indicia of congressional intent," specific to the investigation and the records at hand, the court refused to find that Congress intended to retain control of agency-created records. *Id.*

*United We Stand* is the first post-*Burka* decision of import to the congressional record question. 359 F.3d at 595. In that case, a political organization sought disclosure of a document created by the IRS in response to a request from the JCT concerning politically-motivated audits of tax-exempt organizations. *Id.* at 597. A directive appended to the end of the JCT's request stated that "'[t]his document is a Congressional record and is entrusted to the [IRS] for your use only. This document may not be disclosed without the prior approval of the [JCT].'" *Id.* (citation omitted). The court held that the "limited scope of the confidentiality directive" was insufficient to cover the IRS's prepared responses, finding that, by "[r]eferring to 'this document,' the letter could not be clearer. If the [JCT] intended to keep confidential not just 'this document' but also the IRS response, it could have done so by referring to 'this document and all IRS documents created in response to it.'" *Id.* at 600–01.

10

The court also refused to accept the IRM provisions on the confidentiality of JCT communications as dispositive, and it could not accept the "far too general," albeit "consistent course of dealing," that the IRS claimed formed a "pre-existing agreement" for congressional control of records submitted in response to JCT requests.  *Id.* at 601–02.  Finally, the JCT's post-hoc objections to disclosure were found "insufficient to evince congressional intent to control." *Id.* at 602.  The court instead ordered the IRS to disclose its responses, except to the extent they "would disclose the [JCT] request."  *Id.* at 601.[6]

Defendant relies heavily on the D.C. Circuit's most recent congressional records decision, *American Civil Liberties Union v. Central Intelligence Agency*, which involved a request for the SSCI's report on a former CIA detention and interrogation program.  823 F.3d at 658.  The court determined that the report—which had been transmitted to the President with a directive that it "'be made available within the CIA and other components of the Executive Branch for use as broadly as appropriate,'" *id.* at 660 (citation omitted)—was a congressional record because the SSCI had explicitly and "unambiguously," *id.* at 665, indicated in a letter to the CIA that records generated during the investigation would be "property of the Committee" and "remain congressional records in their entirety . . . , even after the completion of the Committee's review[.]"  *Id.* at 658 (citation omitted).  Even in the absence of a "secret" marking or legend on the report itself, the existence of the detailed letter created at the outset of the SSCI's investigation, and prior to the creation and dissemination of the requested report, was sufficiently clear to indicate the SSCI's intent to retain control over its work-product.  *Id.* at 665.

---

[6] Defendant argues that the legend currently used by the JCT and the relevant provisions in the IRM have been updated to cover "any documents created by [the IRS] in connection with a response," "including (but not limited to) any replies to the [JCT]."  Def.'s Br. at 13 n.6.  That is inapposite, however, as Item One of the First Request explicitly seeks records that "do not contain a legend restricting their use or dissemination."  Compl. Ex. 2 at 2; *see also* § I.C *infra* (discussing how each item of both requests seek only agency records that will not contain a legend).

Unlike the letters rejected in *United We Stand* and *Paisley*, the SSCI's letter was neither "too general and sweeping" nor a "post hoc" manifestation of intent, let alone evidence of a "pre-existing arrangement." *Id.* at 665–67.  Nevertheless, the court explained further that such intent could be "overcome if the record reveal[ed] that Congress subsequently acted to vitiate the intent to maintain exclusive control over the documents that was manifested at the time of the documents' creation." *Id.* at 664.  Thus, it cannot properly be said, as Defendant suggests, *see* Def.'s Mem. at 16–17, that "expansive language," by itself, immunizes congressional documents from ever becoming agency records.

To summarize, the above cases establish the requisite indicia of congressional intent to retain control of records acquired by agencies within the "legitimate conduct of [their] official duties." *Tax Analysts*, 492 U.S. at 145.  Congress must manifest its intent clearly and with specific language particular to the records at issue. *Paisley*, 712 F.2d at 692–93.  Neither Congress nor agencies can rely on general, far-reaching, and pre-existing arrangements. *United We Stand*, 359 F.3d at 601–602; *Holy Spirit*, 636 F.2d at 841.  Post-hoc attempts to establish intent after the filing of a FOIA request or after the beginning of litigation also are inadequate. *United We Stand*, 359 F.3d at 601–02; *Holy Spirit*, 636 F.2d at 842.  Congress must instead establish its intent to maintain control over records before they are created, *ACLU*, 823 F.3d at 665, or contemporaneous with their transfer to an agency, *Paisley*, 712 F.2d at 694, and not act in some subsequent way so as to vitiate that original intent.  *ACLU*, 823 F.3d at 664.

## B. The JCT Has Not Manifested Sufficient Intent to Retain Control of All the Records Potentially Responsive to the CoA Institute FOIA Requests

In light of the applicable legal standards and the material facts of this case, as set forth above, the JCT has failed to affirmatively express its intent to control all of the records potentially responsive to the CoA Institute requests at issue.  In part, this failure is likely caused

by Defendant's refusal to conduct a search for the records actually sought by CoA Institute—
*e.g.*, "records transmitted between the IRS and the JCT . . . which do not contain a legend
restricting their use or dissemination," Compl. Ex. 2 at 2—or to understand the scope of the First
and Second Requests.  The evidence proffered by Defendant and the JCT in support of the
motion to dismiss underscores the government's improper attempt to use broad, generalized
language, and references to pre-existing practice and policy, to exempt a wide swath of records
that should be available under the FOIA.

1.    **The JCT Exhibits in Support of the Motion to Dismiss Do Not
Establish the Requisite Intent**

In support of its claim that all the potentially responsive records at issue are congressional
records, Defendant introduces three exhibits from the JCT: (1) a declaration of the JCT's Chief
of Staff, Thomas Barthold, Decl. of Thomas A. Barthold ¶ 1, Feb. 21, 2017, ECF No. 11-2;
(2) an excerpt from the JCT's Policy Manual, Joint Comm. on Tax. Policy Manual, July 1, 2007,
ECF No. 11-4; and (3) a letter from Mr. Barthold to IRS Commissioner John Koskinen, which
was written after CoA Institute submitted its FOIA requests and which asserts a privilege under
the "Speech or Debate Clause of the Constitution."  Letter of Thomas Barthold to John
Koskinen, Aug. 3, 2016, ECF No. 11-5.  None of these exhibits support the blanket conclusion
that all the records at issue are congressional in nature.

Mr. Barthold's letter to Commissioner Koskinen is insufficient to have manifested the
requisite congressional intent because it mischaracterizes the scope of the CoA Institute requests,
is non-specific, and post-dates the creation or transfer of any potentially responsive records.  Mr.
Barthold refers to IRM "paragraph 11.3.13.5.4," but that section only addresses records
containing a legend that explicitly indicates the JCT's intent and instructions.  *See* I.R.M.
§ 11.3.13.5.4.2 ("Whenever the [JCT] corresponds with the IRS under [26 U.S.C. § 8021], it

includes a legend on the incoming correspondence that restricts the dissemination and use of both the inquiry and responsive records."); *see also id.* § 11.3.13.5.4.4 ("Whenever the [JCT]'s inquiry letter includes the restrictive legend, that letter remains a congressional record. In addition, any records created by the IRS in connection with the agency's response . . . [are] congressional records."). Mr. Barthold never addresses the substance of CoA Institute's requests, which seek access to a broader range of records and explicitly exclude records exempt under the conditions set forth in the JCT's legend. *See* Compl. Ex. 2 at 2 (Item One); § I.C *infra*.

Although it is possible that records that do not contain a legend might be exempt under conditions memorialized in another document, *see, e.g.*, *ACLU*, 823 F.2d at 665, Mr. Barthold never refers to any such memorialization. Instead, his letter, which post-dates the CoA Institute FOIA requests by two months, is exactly the sort of post-hoc attempt to manifest intent that courts have repeatedly rejected. *See Holy Spirit*, 636 F.2d at 842 (citing *Goland*, 607 F.2d at 348 n.48); *Paisley*, 712 F.2d at 695 (also citing *Goland*); *United We Stand*, 359 F.3d at 601–02.

For similar reasons, the JCT Policy Manual is unavailing. As the manual itself indicates, "to protect [JCT] documents as Congressional documents, the . . . legend *must be included* on written communications (including electronic mail)[.]" JCT Policy Manual at 4 (emphasis added); *see also* JCT Policy Manual at 5 ("[I]f a Treasury, IRS, or other Federal agency recipient is among the addresses, the legend *must be included*.") (emphasis added). It is impossible to reconcile the plain text of the manual with the broad assertion in the CCDM that "the absence of the legend" is not determinative. Compl. Ex. 1 at 3 (CCDM § 35.5.4.9(7)). Further, the Policy Manual says nothing about records that *do not* contain a legend.

Finally, with respect to Mr. Barthold's declaration, it is unclear how such a document prepared for the present litigation can evidence the congressional intent that prior courts have

required.  Although Mr. Barthold stresses the importance of confidentiality in the JCT's work, *see, e.g.*, Barthold Decl. ¶¶ 6–9; *see also* Def.'s Mem. at 6–7, courts have rejected such broad and non-specific assertions of JCT confidentiality, *see United We Stand*, 359 F.3d at 601–02, as they have with other congressional committees.  *See Paisley*, at 696 (expressing concern that the SSCI's "insubstantial and commonplace" claims could "undermin[e] the spirit of broad disclosure that animates the [FOIA]").  References to pre-existing arrangements, or "longstanding polic[ies] and practice," Barthold Decl. ¶¶ 10, 13, also are insufficient.  *See Paisley*, 712 F.2d at 694 (rejecting "pre-existing agreement" for treatment of "documents exchanges between the CIA and the SSCI").  Although the "JCT endeavors to include the legend on all correspondence," Barthold Decl. ¶ 15, the fact remains that sometimes a legend is not used, perhaps in cases where JCT staff and the IRS communicate outside the course of ordinary business or more informally.  If the JCT could at once, and by fiat, intend to treat all records of its dealings with the IRS, or any other agency, as congressional records, *see* Barthold Decl. ¶ 16, it would obviate the need for a legend in the first place and defeat the need for the specific expressions of congressional intent that the courts have required.

### 2.     The Landes Declaration Is Insufficient to Indicate the Requisite Intent

Defendant also proffers a declaration from Scott Landes, a supervisory management and program analyst in the IRS Office of Legislative Affairs.  Decl. of Scott S. Landes ¶ 1, Feb. 21, 2017, ECF 11-3.  Mr. Landes's declaration fails for the same reasons that Defendant's reliance on the JCT exhibits fails, as it does not and cannot establish the requisite congressional intent.

Most of Mr. Landes's statement describes the process by which the IRS responds to JCT inquiries.  For example, "[w]hen the JCT's Chief of Staff sends a letter to the Commissioner of the IRS requesting . . . information, it is directed to [Mr. Landes's] office," along with "e-mail request[s] for information."  Landes Decl. ¶ 5.  These communications are catalogued and stored

in the E-track Communications and Correspondence System database, Landes Decl. ¶ 8, and in "separate electronic folders on . . . desktop computers." Landes Decl. ¶ 9. Verbal requests are "memorialized in writing in an email" after the fact. Landes Decl. ¶ 10. With respect to the confidentiality of records and their status as congressional records, Mr. Landes points to a "longstanding policy and practice" that is "reflected and communicated to the IRS in several ways," Landes Decl. ¶ 11, including (1) legends at the end of letters or e-mail messages, Landes Decl. ¶¶ 12–13; (2) a section of the IRM, Landes Decl. ¶ 14; and (3) the recent codification in the CCDM of the IRS's "practice" of treating anything without a legend as a "congressional record." Landes Decl. ¶ 15.

There are deficiencies with all three of these expressions, as none of them manifest Congress's clear intent to control all records potentially responsive to the CoA Institute FOIA requests. First, regarding the legend, CoA Institute excluded from the scope of Item One of its First Request any records transmitted between the IRS and the JCT containing an appropriate legend restricting their use or dissemination. Compl. Ex. 2 at 2; *see also* § I.C *infra*.

Defendant's reliance on the IRM also is misplaced.[7] Section 11.3.13.5.4 only addresses incoming correspondence from the JCT containing a legend and IRS responses to such inquiries. Section 35.5.4.9 merely "transmits" and reproduces the contents of the December 2015 CCDM directive. By parroting the JCT legend and the CCDM guidance, the IRS cannot manifest Congress's intent to maintain control of records that *do not contain* a legend. The IRM, in other words, cannot make up for what Congress has failed to assert. *See United We Stand*, 359 F.3d at 601–02; *see also Paisley*, 712 F.2d at 695; *Holy Spirit*, 636 F.2d at 842.

---

[7] Mr. Landes cites to a previous version of the IRM, which is not publicly available. Landes Decl. ¶ 14. It appears, however, based on Mr. Landes's representations, that the current IRM is not substantially different.

As for the CCDM, it appears that the IRS would like to have its cake and eat it, too.  The presence and wording of the JCT legend is the most important indicium of Congress's intent to retain control over its records and those created by the IRS in response to an official inquiry.  *See United We Stand*, 359 F.3d at 601 ("[F]or essentially the same reason that courts do not allow unambiguous statutory language to be revised through legislative history, we cannot accept [the IRS's] revisionist reading of the [JCT's legend]. . . . [The legend] could not be clearer.") (citation omitted).  In this sense, "the absence of the legend," Compl. Ex. 1 at 3 (CCDM § 35.5.4.9(7)), is determinative.  Any practice of treating records that do not contain a legend as congressional records—at least, in the absence of extrinsic evidence of Congress's manifest intent—violates the FOIA.  *See* I.R.M. § 11.3.13.5.4.4 (IRS policy of not searching for responsive records believed to be "associated with" JCT requests).  Such is the case here.

**C.     The CoA Institute FOIA Requests Seek Agency Records Controlled by the IRS**

A close examination of CoA Institute's FOIA requests demonstrates that they seek agency records subject to the FOIA.

**1.     The First Request**

Item One of the First Request seeks any "records transmitted between the IRS and the JCT, and all communications concerning such transmissions, which do not contain a legend restricting their use or dissemination."  Compl. Ex. 2 at 2.  These records are not congressional in nature because the JCT legend is one of the most important indicia of congressional intent to retain control of records and to restrict their use by the IRS, and the request expressly excludes records containing such a legend.  *See United We Stand*, 359 F.3d at 601.  CoA Institute recognizes that, absent a legend, the IRS may still point to other evidence demonstrating the JCT's intent to control a record, *see ACLU*, 823 F.2d at 665, but that has not been done here.

17

The agency cannot rely on pre-existing, general policy or practice, nor can it treat records that lack a legend as congressional records based on post-hoc manifestations of the JCT's desire to retain control.  *See Holy Spirit*, 636 F.2d at 842 (citing *Goland*, 607 F.2d at 348 n.48); *Paisley*, 712 F.2d at 695 (also citing *Goland*); *United We Stand*, 359 F.3d at 601–02.

Item Two of the First Request seeks "[a]ll communications between IRS Privacy, Governmental Liaison, and Disclosure ("PGLD") personnel, as well as other affected IRS functions or components, and the JCT concerning any determination to disclose or withhold IRS records that were the subject of a JCT oversight inquiry."  Compl. Ex. 2 at 2.  These records would not and could not have been created in the course of the JCT's ordinary business, as they do not implicate its statutory duties.  Rather, these communications concern the IRS decisions to withhold, release, or redact JCT-related records that have been requested by third parties.  Notably, Item Two does not itself seek copies of any records transmitted between the agency and the JCT as part of a congressional investigation, but only communications concerning the IRS decision to "disclose or withhold" such records.  To the extent disclosure of records responsive to Item Two would reveal the substance of a JCT inquiry, then they could be produced subject to appropriate redaction.  *See United We Stand*, 359 F.3d at 601 (citing *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984)); *see also Holy Spirit*, 636 F.2d at 841 n.3.

Item Three of the First Request concerns "records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT in response to a general oversight inquiry."  Compl. Ex. 2 at 2.  Although Defendant points to the IRM and the CCDM to distinguish between requests for records that happen also to have been provided to the JCT and requests intentionally seeking records that were part of a JCT investigation, *see* Compl. Ex. 1 at 3 (CCDM 35.5.4.9(9)(a)), that distinction cannot be maintained in light of the cases that

allow redaction of information that might reveal the substance of confidential JCT inquiries but nevertheless require disclosure of the records. *See, e.g.*, *United We Stand*, 359 F.3d at 601.

More importantly, the current legend only covers the JCT's inquiry letters and "any documents *created* by the [IRS] in connection with [its] response." Compl. Ex. 1 at 2 (emphasis added); *see* Barthold Decl. ¶¶ 10, 12, 20. A record that already has been generated by the IRS and is maintained in its systems of files, but which is later requested by the JCT or provided to it, cannot properly be described as having been "created" by the IRS "in connection with" a response to an inquiry. Such records are distinguishable from, for example, a cover letter, report, data sheet, or memorandum created to fulfill the IRS response to a JCT inquiry.

Item Four of the First Request seeks "[a]ll records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT as part of its general oversight responsibilities, but which were not provided in response to a JCT inquiry." Compl. Ex. 2 at 2. These records likely are not covered by the JCT legend because they could have been transmitted to the JCT as required by law rather than in response to an inquiry. For example, under 26 U.S.C. § 6103(p)(3)(B), the IRS annually provides the JCT with a report on various types of requests for inspection or disclosure of tax returns and return information. Although the JCT has statutory discretion to release these reports, in whole or in part, to any person (or the public), Section 6103 does nothing to restrict the IRS's own use of the reports in a manner consistent with taxpayer confidentiality. Indeed, Defendant has previously disclosed to CoA Institute records directly responsive to Item Four, namely, Section 6103(p)(3)(B) reports for calendar years 2009, 2010, and 2011, but with appropriate redaction. *See* Decl. of Ryan P. Mulvey ¶ 5, Mar. 3, 2017; Mulvey Decl. Exs. 2–3, 5.

Under 26 U.S.C. § 6103(p)(3)(C), the IRS also must "furnish to the [JCT] for disclosure to the public" a shortened version of the report compiled under Section 6103(p)(3)(B).  Once again, these reports are not created in response to an inquiry, and the JCT has no power to prevent their ultimate disclosure to the public.  In fact, Section 6103 requires their publication.  Thus, IRS reports provided to the JCT under Section 6103(p)(3)(C) must be disclosed.  *See, e.g.*, U.S. J. Comm. on Tax., Disclosure Report for Public Inspection Pursuant to Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2009, *available at* http://1.usa.gov/28JsWrw; *see also ACLU*, 823 F.3d at 664.  This would be consistent with past IRS FOIA disclosure practice.  Mulvey Decl. ¶ 5; Mulvey Decl. Ex. 4.

Finally, Item 5 of the First Request seeks "[a]ll records by or originating at the JCT but which were provided to the IRS and are maintained by the IRS in any agency records system, including but not limited to the E-trak Communications and Correspondence tracking system."  Compl. Ex. 2 at 2.  Although broadly written, the intent of this item is to secure records that had originated from the JCT but were later integrated into IRS recordkeeping systems in such a way that the second prong of the *Burka* test would be met.  To the extent that the IRS is able to use and dispose of a record as it sees fit, even one that originated from the JCT, that record would then be an agency record subject to the FOIA.

## 2.    The Second Request

The Second Request seeks access to all records of communications between the IRS and the JCT implicating any one of thirty-eight (38) identified search terms.  Compl. Ex. 3 at 2.  To the extent responsive records reflect formal JCT requests for information, or IRS responses thereto, and the communications contain a proper JCT legend, those records may be exempt as congressional records.  However, for the reasons already stated, in the absence of any such legend, the IRS is obliged to treat such records as agency records, notwithstanding the CCDM

guidance or any pre-established policy or practice.  In these cases, the IRS would be required to produce the records, but with redactions of any portions of the communications that could reveal the substance of a confidential JCT investigation, *see United We Stand*, 359 F.3d at 601—unless the existence of that investigation were already publically disclosed.  *See ACLU*, 823 F.3d at 664 (later act by Congress can vitiate original intent to control).

As indicated by the search terms, the Second Request is also broader in scope than Defendant is willing to admit.  Defendant implies that CoA Institute only seeks "'records transmitted in the course of JCT's official business, and records compiled or prepared by the IRS in connection with such communication.'"  Def.'s Mem. at 20 (citation omitted).  That is incorrect.  The JCT's prescribed duties, as Defendant itself observes, "include investigating 'the operation and effects of the Federal system of internal revenue taxes' and the administration of such taxes by the [IRS] or any executive department, establishment, or agency charged with their administration.'"  Def.'s Mem. at 3 (citing 26 U.S.C. § 8022(1)).[8]  Defendant does not explain how records implicating such entities as CoA Institute ("Cause of Action"), other components of the Executive Branch (*e.g.*, "DOJ" or "White House"), or non-tax-related statutes (*e.g.*, "Paperwork Reduction," "Privacy Act," or "Federal Records Act") would compromise the official activities and confidentiality concerns of the JCT.  It may be that such records do not exist.  *See* Compl. Ex. 3 at 2.  But the IRS cannot refuse to conduct a search on the basis that all potentially responsive records are congressional in nature when in fact they are not.

## II.     THE RECORDS SOUGHT ARE NOT CONGRESSIONALLY PRIVILEGED

Although Defendant did not set forth an argument for the application of congressional privilege to potentially responsive records in its motion to dismiss, Mr. Barthold has asserted the

---

[8] The JCT is also responsible for the simplification of the tax code, 26 U.S.C. § 8022(2), and reporting on its activities to other bodies of the Congress.  *Id.* § 8022(3).

Speech or Debate Clause privilege on behalf of the JCT.  Barthold Letter at 1; Barthold Decl.

¶ 21 ("[T]he records [at issue] . . . 'are absolutely privileged from production under the Speech or

Debate Clause of the Constitution[.]") (citation omitted).  Yet, the disclosure of the requested

records would not compromise the ability of the JCT to conduct its oversight of the federal tax

system, nor would it implicate any of the concerns associated with the policy underlying the

Speech or Debate Clause.  The JCT's assertion of privilege should fail and the IRS should be

precluded from relying on the Speech or Debate Clause to avoid conducting a search for

potentially responsive records that are not otherwise exempt as congressional documents.

The Speech or Debate Clause provides that, "for any Speech or Debate in either House,

[Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I,

§ 6, cl. 1.  The purpose of the clause is to "protect the integrity of the legislative process."

*United States v. Brewster*, 408 U.S. 501, 507 (1972).  To that end, it is understood to protect

Members from being "distracted from or hindered in the performance of their legislative tasks[.]"

*Powell v. McCormack*, 395 U.S. 486, 505 (1969).  Thus, courts bar lawsuits intended to hold

individual legislators—or, by extension, congressional aides, *see Gravel v. United States*, 408

U.S. 606, 621 (1972)—liable for legislative activities, s*ee, e.g.*, *Doe v. McMillan*, 412 U.S. 306,

312–313 (1973), or that might "interfere with an ongoing activity by Congress . . . within the

legitimate legislative sphere."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 n.16

(1975); *see, e.g.*, *McSurely v. McClellan*, 553 F.2d 1277, 1296 (D.C. Cir. 1976).

In this case, no individual Member or congressional aide has asserted the Speech or

Debate Clause.  The fundamental purpose of the Clause, therefore, would not be served by

recognizing Mr. Barthold's assertion of privilege on behalf of the entire JCT, assuming he were

even the appropriate party to make such an assertion.  *See Allen v. Dep't of Def.*, 580 F. Supp.

74, 84 (D.D.C. 1983) ("No member of the House of Representatives has sought to intervene . . .

or has alleged impairment of the legislative process as a result of plaintiff's FOIA requests.");

*see also Holy Spirit Ass'n for the Unification of World Christianity v. Cent. Intelligence Agency*,

558 F. Supp. 41, 44 (D.D.C. 1983) ("No member of Congress or appropriate representative has

come forward as a party to raise the issue.  The Clerk merely appears as *amicus* and his

representations are general, posing no concrete case or controversy.").

It is also unclear how production of the records at issue in this case would interfere with

ongoing JCT activity.  Mr. Barthold's assertion of the privilege is so broad that he fails to

indicate whether there are, in fact, any ongoing investigations that would be jeopardized by

disclosure of any of the records potentially responsive to the CoA Institute FOIA requests.  In

sum, Defendant has failed to demonstrate how and why the Speech or Debate Clause can be used

in conjunction with Exemption 5 of the FOIA, and Mr. Barthold's assertion of the privilege does

not advance the agency in making that case.

//

//

//

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendant Internal Revenue Service's motion to dismiss and order the agency to process the FOIA requests at issue and produce all responsive records.

Dated: March 3, 2017                                      Respectfully submitted,

                                                         */s/ Ryan P. Mulvey*
                                                         Ryan P. Mulvey
                                                         (D.C. Bar No. 1024362)
                                                         Lee A. Steven
                                                         (D.C. Bar No. 468543)

                                                         CAUSE OF ACTION INSTITUTE
                                                         1875 Eye Street, N.W., Suite 800
                                                         Washington, D.C. 20006
                                                         Telephone: (202) 499-4232
                                                         Facsimile: (202) 330-5842
                                                         ryan.mulvey@causeofaction.org
                                                         lee.steven@causeofaction.org

                                                         *Counsel for Plaintiff*