**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
CAUSE OF ACTION INSTITUTE,      )
                                              )
              Plaintiff,                      )
                                              )
       v.                                     )          Civil Action No. 16-2354 (FYP)
                                              )
INTERNAL REVENUE SERVICE    )
                                              )
              Defendant.                    )
_____)


**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**


Ryan P. Mulvey
(D.C. Bar No. 1024362)
Lee A. Steven
(D.C. Bar No. 468543)

CAUSE OF ACTION INSTITUTE
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 482-4182
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff CoA Institute*

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

Introduction ....................................................................................................................... 1

Argument ........................................................................................................................... 1

I.      The Court has subject-matter jurisdiction to adjudicate this case................................... 1

II.     The IRS improperly redacted its *Vaughn* index and the Cummiskey Declaration. ......... 2

III.    The IRS has failed to respond to CoA Institute's evidentiary objections....................... 2

IV.     The IRS distorts the relevant legal test for agency control. .............................................. 4

V.      The records at issue are "agency records" subject to the FOIA. ...................................... 6

        A.      The IRS has failed to rehabilitate the Barthold Declaration, JCT Exhibits,
                and Second Landes Declaration.......................................................................... 6

        B.      The E-TRAK records are "agency records." ..................................................... 9

        C.      The records located in Scott Landes's e-mail and electronic folders are
                "agency records." ............................................................................................... 9

                1.      Internal IRS and External IRS-JCT Communications ............................. 9

                2.      Alleged "Personal Records" .................................................................. 10

                3.      The Additional "12 email" Records........................................................ 12

        D.      Secretarial reports under I.R.C. § 6103(p)(3) are "agency records."................. 13

VI.     The records at issue are not "congressionally privileged."............................................. 14

VII.    Exemption 5 does not apply to the remaining e-mail records. ....................................... 14

        A.      The IRS cannot use the deliberative-process privilege to withhold records...... 14

        B.      The IRS cannot use the attorney-client privilege to withhold records.............. 17

        C.      The IRS cannot use the attorney work-product privilege to withhold records.. 19

        D.      The IRS has not satisfied its burden under the "foreseeable harm" standard.... 22

VIII.   The IRS has waived any argument it satisfied its obligation to undertake
        reasonable efforts to segregate and release non-exempt portions of records................. 24

IX.     CoA Institute's request for *in camera* review is unopposed.......................................... 24

Conclusion ........................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Department of Defense*,
    580 F. Supp. 74 (D.D.C. 1983) ................................................................................14

*American Civil Liberties Union v. Central Intelligence Agency*,
    823 F.3d 655 (D.C. Cir. 2016) ..............................................................................4, 8

*American Oversight, Inc. v. Department of Health & Human Services*,
    No. 17-0827, 2018 WL 4765145 (D.D.C. Aug. 10, 2018) ......................................5

*Brinton v. Department of State*,
    636 F.2d 600 (D.C. Cir. 1980) ..............................................................................17

*Bureau of National Affairs, Inc. v. Department of Justice*,
    742 F.2d 1484 (D.C. Cir. 1984) ............................................................................11

*Cause of Action Institute v. Department of Justice*,
    999 F.3d 696 (D.C. Cir. 2021) ................................................................................6

*Cause of Action Institute v. Office of Management & Budget*,
    10 F.4th 849 (D.C. Cir. 2021) ...........................................................................2, 11

*Coastal States Gas Corp. v. Department of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ..........................................................................19, 20

*Consumer Federation of America v. Department of Agriculture*,
    455 F.3d 283 (D.C. Cir. 2006) ..............................................................................11

*Delaney, Migdail & Young, Chartered v. Internal Revenue Service*,
    826 F.2d 124 (D.C. Cir. 1987) ..............................................................................20

*Department of Justice v. Reporters Committee for Freedom of the Press*,
    489 U.S. 749 (1989) ...............................................................................................21

*Edmonds Institute v. Department of the Interior*,
    383 F. Supp. 2d 105 (D.D.C. 2005) ......................................................................24

*Holy Spirit Ass'n for the Unification of World Christianity v.*
*Central Intelligence Agency*,
    636 F.2d 838 (D.C. Cir. 1980) .......................................................................4, 6, 12

*Holy Spirit Ass'n for Unification of World Christianity v.*
  *Central Intelligence Agency,*
  558 F. Supp. 41 (D.D.C. 1983) ........................................................................14

*Judicial Watch, Inc. v. U.S. Postal Service,*
  297 F. Supp. 2d 252 (D.D.C. 2004) .................................................................18

*Mead Data Central, Inc. v. Department of the Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) .......................................................................24

*Muttitt v. Department of State,*
  926 F. Supp. 2d 284 (D.D.C. 2013) .................................................................18

*National Security Counselors v. Central Intelligence Agency,*
  898 F. Supp. 2d 233 (D.D.C. 2012) .................................................................15

*Paisley v. Central Intelligence Agency,*
  712 F.2d 686 (D.C. Cir. 1983) .....................................................................4, 12

*Pinson v. Department of Justice,*
  177 F. Supp. 3d 56 (D.D.C. 2016) .......................................................2, 4, 23, 24

*Ray v. Turner,*
  587 F.2d 1187 (D.C. Cir. 1978) ........................................................................2

*Rosenberg v. Department of Defense,*
  342 F. Supp. 3d 62 (D.D.C. 2018) ...................................................................23

*SafeCard Services, Inc. v. Securities & Exchange Commission,*
  926 F.2d 1197 (D.C. Cir. 1991) ......................................................................21

*Senate of the Commonwealth of Puerto Rico v. Department of Justice,*
  823 F.2d 574 (D.C. Cir. 1987) .......................................................................20

*Shapiro v. Department of Justice,*
  153 F. Supp. 3d 253 (D.D.C. 2016) .................................................................16

*United We Stand America, Inc. v. Internal Revenue Service,*
  359 F.3d 595 (D.C. Cir. 2004) ................................................................ *passim*

**Statutes**

I.R.C. § 6103(p)(3)(B) ......................................................................................13

I.R.C. § 6103(p)(3)(C) ......................................................................................13

## INTRODUCTION

Defendant Internal Revenue Service ("IRS") refuses to release any of the records it has identified as responsive in this Freedom of Information Act ("FOIA") case. The agency maintains the bulk of those documents are "congressional records" under the control of the Joint Committee on Taxation ("JCT"). In its opposition to Plaintiff Cause of Action Institute's ("CoA Institute") cross-motion for summary judgment, the IRS refused to engage with most of CoA Institute's arguments. The agency ignored CoA Institute's evidentiary objections. It ignored the argument on segregability. And it ignored CoA Institute's request for *in camera* review, to say nothing of its rejoinder on subject-matter jurisdiction. In short, the agency has failed to provide any detailed defense for its decision to treat most records as "congressional" in nature. The IRS instead seems content to misstate aspects of the relevant control test and mischaracterize important aspects of CoA Institute's presentation of the attendant caselaw. The IRS's refusal to describe the relevant records with any real specificity—much like its decision to submit a redacted declaration and *Vaughn* index to justify its Exemption 5 withholdings—evinces a disturbing unwillingness to recognize CoA Institute's requests and the agency's obligations under the FOIA.

CoA Institute respectfully requests the Court to deny the IRS's motion for summary judgment, grant CoA Institute's cross-motion, and order the release of the records at issue.

## ARGUMENT

### I.     The Court has subject-matter jurisdiction to adjudicate this case.

The IRS effectively admits the Court has subject-matter jurisdiction to adjudicate this case. In its initial brief, the agency attempted to relitigate its failed motion to dismiss by insisting the Court had misread precedent clarifying the nature of the agency-control issue. *See* Mem. in Supp. of the Internal Revenue Serv.'s Mot. for Summ. J. at 31–33 [hereinafter "Def.'s Mem."]. CoA

1

Institute responded by pointing to recent Circuit caselaw that ends any debate: "The text and structure of FOIA . . . make clear that whether the requested materials are 'agency records' goes to the merits of the dispute—the 'court's authority to impose certain remedies'—rather than the court's jurisdictional power to hear the case." *Cause of Action Inst. v. Office of Mgmt. & Budget*, 10 F.4th 849, 854 (D.C. Cir. 2021) (citation omitted); *see* Mem. of P. & A. in Opp'n to Def.'s Mot for Summ. J. & In Supp. of Pl.'s Cross-Mot. for Summ. J. at 7–8 [hereinafter "Pl.'s Mem."]. The IRS fails to offer any further argument in its opposition brief. The issue is conceded in CoA Institute's favor. *See Pinson v. Dep't of Justice*, 177 F. Supp. 3d 56, 81 (D.D.C. 2016).

## II.    The IRS improperly redacted its *Vaughn* index and the Cummiskey Declaration.

The IRS has not justified the heavy redaction of its *Vaughn* index and the Cummiskey Declaration. As CoA Institute explained in its cross-motion, *see* Pl.'s Mem. at 8–10, "[t]he IRS's redaction of the essential elements of its argument for the use of Exemption 5 is patently unfair and prejudicial[.]" *Id.* at 8. The IRS did not respond in any substantive way, merely noting CoA Institute's "objections" in a footnote of its opposition brief. Reply in Supp. [of] Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J. at 13 n. 3 [hereinafter "Def.'s Opp'n"]. The Court may treat the matter as conceded in CoA Institute's favor. *See Pinson*, 177 F. Supp. 3d at 81. It should order the IRS to refile its *Vaughn* index and the Cummiskey Declaration without redaction and afford CoA Institute an opportunity to submit a supplemental brief, if it so chooses. *Cf. Ray v. Turner*, 587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978).

## III.    The IRS has failed to respond to CoA Institute's evidentiary objections.

CoA Institute raised several objections in its cross-motion to the admissibility of testimony underlying the IRS's factual allegations. *See* Pl.'s Mem. at 10 n.3; *see also* Pl.'s Resp. to IRS's

Separate Statement of Undisputed Material Facts at 11–12, 32, 35, 50–51, 53 (Resps. to ¶¶ 34, 102, 108, 136, 141). Specifically, CoA Institute argued the following:

Portions of the Second Landes Declaration are inadmissible because they lack foundation, are not based on personal knowledge, and amount to hearsay. Mr. Landes is an IRS employee and cannot testify to a supposed "policy" or "practice" of the JCT, let alone the mental state of JCT staff when deciding whether to include a restrictive legend on communications with the IRS. *See, e.g.*, 2d Decl. of Scott S. Landes ¶ 12.

Portions of the Cummiskey Declaration are inadmissible because they lack foundation, are not based on personal knowledge, and amount to hearsay. Mr. Cummiskey was not involved in the creation or transmission of records reflecting the processing of CoA Institute's FOIA requests, and therefore he cannot speak to the motivation or mental state of IRS attorneys or their ostensible anticipation of litigation. *See* Decl. of Kevin Cummiskey ¶ 14. Similarly, Mr. Cummiskey, who is an IRS employee, cannot testify to the likelihood of the JCT corresponding with the IRS about pending requests, or otherwise "monitor[ing]" the IRS's FOIA processing. *See* Cummiskey Decl. ¶ 25. Finally, Mr. Cummiskey cannot testify to what transpired in the IRS's dealings with the JCT apropos of revisions to the Internal Revenue Manual ("IRM") and Chief Counsel Directives Manual ("CCDM"), or at least he has not explained how he acquired the personal knowledge to do so. *See* Cummiskey Decl. ¶ 23.

The Cummiskey Declaration contains unqualified expert testimony. Mr. Cummiskey opines on the state of FOIA law, including the grounds for waiving the attorney work-product privilege. *See* Cummiskey Decl. ¶ 15. The IRS has made no effort to show how Mr. Cummiskey is qualified to provide such expert legal testimony.

The IRS has failed to respond to any of the foregoing objections. These objections should be treated as conceded in CoA Institute's favor. *See Pinson*, 177 F. Supp. 3d at 81. The Court should strike the relevant paragraphs of the Second Landes and Cummiskey Declarations.

**IV.     The IRS distorts the relevant legal test for agency control.**

In its initial brief, CoA Institute provided an in-depth discussion of the relevant "control" test for determining the status of records reflecting IRS-JCT interactions under the FOIA. *See* Pl.'s Mem. at 10–17. In sum, the IRS must show the JCT manifested its intent to retain control clearly and with specific language particular to the records at issue. *Paisley v. Cent. Intelligence Agency*, 712 F.2d 686, 692–93 (D.C. Cir. 1983). Neither the JCT nor the IRS may rely on general, far-reaching, and pre-existing arrangements to establish the requisite intent. *United We Stand Am., Inc. v. Internal Revenue Serv.*, 359 F.3d 595, 601–02 (D.C. Cir. 2004); *Holy Spirit Ass'n for the Unification of World Christianity v. Cent. Intelligence Agency*, 636 F.2d 838, 841 (D.C. Cir. 1980). Post-hoc attempts to establish intent, especially after the filing of a FOIA request or the beginning of litigation, are inadequate. *United We Stand*, 359 F.3d at 601–02; *Holy Spirit*, 636 F.2d at 842. The JCT must have established its intent to maintain control before any records were created, *Am. Civil Liberties Union v. Cent. Intelligence Agency*, 823 F.3d 655, 665 (D.C. Cir. 2016) [hereinafter "*ACLU*"], or contemporaneous with their transfer to the IRS. *Paisley*, 712 F.2d at 694. The JCT also must not have taken any subsequent act to vitiate its original intent. *ACLU*, 823 F.3d at 664.

The IRS distorts this test, and CoA Institute's broader arguments, in at least three ways. *First*, the agency claims "Cause of Action insists . . . Congress must express its intent to control agency-created records by giving . . . 'contemporaneous' instructions." Def.'s Opp'n at 2. Not so. CoA Institute has argued consistently Congress must express its intent to maintain control of records either contemporaneously with their creation or transfer, as the D.C. Circuit required in

*Paisley*, *see* Pl.'s Mem. at 14, *or* before their creation. *See id.* at 16. In the latter case, however, the requisite intent must be "detailed" and particular to the records at hand. *See id.* ("[T]he existence of the detailed letter created at the outset of the SSCI's investigation, and prior to the creation and dissemination of the requested report, was sufficiently clear to indicate the SSCI's intent to retain control over any work-product.") (citing *ACLU*, 823 F.3d at 665–67).

*Second*, the IRS now argues Congress may express its intent "even . . . after" the creation of records, "so long as it does not respond to FOIA litigation." Def.'s Opp'n at 2. That is incorrect, and *United We Stand* does not support any such notion. On the contrary, the *United We Stand* court rejected the idea that the JCT's "continued objection to disclosure demonstrate[d] its intent to control." 359 F.3d at 602. Regardless of whether an attempt to assert control after the fact is motivated by FOIA litigation or not, it is ineffective: "[T]he [JCT's] post-hoc objections to disclosure cannot manifest the clear assertion of congressional control that [the D.C. Circuit's] case law requires." *Id.*[1] The IRS itself is inconsistent on the point, elsewhere admitting "that after-the-fact statements . . . are not enough by themselves to manifest [Congress's] . . . intent to control its own communications or agency documents created in response." Def.'s Opp'n at 8.

*Third*, the IRS muddies the waters by arguing portions of a record created by an agency—and otherwise under agency control—can still be redacted to protect those "'portions . . . that would effectively disclose [a congressional] request.'" Def.'s Opp'n at 3 (citing *United We Stand*, 359 F.3d at 602). On the one hand, this is a remarkable concession. If taken at face value, it suggests the IRS believes it needed to conduct a line-by-line segregability analysis to determine whether portions of records, which do not contain a legend or fall squarely within the

---

[1] The IRS's reliance on *American Oversight, Inc. v. Department of Health & Human Services* is inapt. The *American Oversight* court did not explicitly address the legitimacy of a post-hoc attempt to manifest intent to retain control and, even if it did, the discussion would be *dicta* because the records at issue were contemporaneously affixed with restrictive legends. *See* No. 17-0827, 2018 WL 4765145, at *3 (D.D.C. Aug. 10, 2018).

scope of the JCT legend, could nevertheless be released in part. There is no indication such an undertaking took place here. On the other hand, the point is somewhat inapt. This aspect of the *United We Stand* decision has been called into question by the D.C. Circuit's recent consideration of more fundamental FOIA principles, such as the definition of a "record," which is conceptually prior to the control inquiry. *See generally Cause of Action Inst. v. Dep't of Justice*, 999 F.3d 696 (D.C. Cir. 2021); *cf. United We Stand*, 359 F.3d at 607–08 (Henderson, J., dissenting).

**V.      The records at issue are "agency records" subject to the FOIA.**

The IRS argues nearly all records in this case are "congressional records" outside of agency control and, thus, not subject to the FOIA. The IRS is mistaken. The mere fact that a record relates to the JCT, was created by the JCT, or was transmitted by the IRS to the JCT, does not by itself render it a congressional record outside the scope of the disclosure. None of the counterarguments in the IRS's opposition brief are persuasive.

**A.      The IRS has failed to rehabilitate the Barthold Declaration, JCT Exhibits, and Second Landes Declaration.**

CoA Institute has explained why the Barthold Declaration (with JCT "exhibits") and the Second Landes Declaration are insufficient, as a general matter, to establish the requisite intent by the JCT to retain control over the records at issue. *See* Pl.'s Mem. at 17–22. These declarations underscore the IRS's improper reliance on broad, generalized language and references to pre-existing "practice and policy." It is worth reiterating the major points CoA Institute raised:

- Mr. Barthold's declaration post-dates the creation or transfer of all the records at issue. It is ineffective. *See United We Stand*, 359 F.3d at 601–02; *Holy Spirit*, 636 F.2d at 842. Mr. Barthold also fails to address "the actual substance of CoA Institute's request[s], which seek[] access to a broader range of records, and which *explicitly do*[] *not seek records exempt under the conditions set forth in the JCT's legend*." Pl.'s Mem. at 18.

- Mr. Barthold (and Mr. Landes) cannot point to any other formal document exchanged between the JCT and the IRS that either clarifies the treatment of legend-less records or

memorializes the conditions under which IRS-created records were to remain under JCT control. *See id.* (citing *ACLU*, 823 F.3d at 665).

- The JCT Staff Manual "says nothing" dispositive "about records that *do not* contain a legend, which constitute the bulk of records at issue here." *Id.* at 19.

- Mr. Barthold's repeated references to supposedly longstanding arrangements and informal agreements about the treatment of JCT-related records is ineffective. Courts have routinely rejected such arguments. *See id.* at 19–20. There is no *specific* evidence in this case of how the JCT intended to treat records that do not fall within the scope of a legend.

- Mr. Landes's reliance on the IRM and CCDM must fail. Those documents "cannot manifest Congress's non-existent intent to maintain control of records that *do not contain* a legend." *Id.* at 21 (citing *United We Stand*, 359 F.3d at 601–02; *Paisley*, 712 F.2d at 695; *Holy Spirit*, 636 F.2d at 842).

- "The presence and wording of the JCT legend is the most important indicium of Congress's intent to retain control over its own records and those created by the IRS in response to an official inquiry." *Id.* (citing *United We Stand*, 359 F.3d at 601).

The IRS provides little in the way of a substantive response to these points. On the contrary, it concedes, at least in part, that CoA Institute is correct. *See* Def.'s Opp'n at 8 ("It is true that after-the-fact statements by Congress . . . are not enough[.]"); *see also id.* ("[I]n the *United We Stand* case . . . the Court of Appeals did not find the IRS's 'consistent course of dealing' with JCT sufficient[.]"). Moreover, the agency makes little effort to defend the relevance of Mr. Barthold's testimony, which amounts to a post-hoc attempt by the JCT to block disclosure. And it does not address the deficiencies in Mr. Landes's declaration regarding the wording of the IRM and CCDM and their provisions for handling records that do not contain a legend or do not constitute the sort of "reply" covered by a legend included on an original JCT inquiry. *See, e.g.*, Decl. of Ryan P. Mulvey Ex. 1 (I.R.M. § 35.5.4.9(7)).

The IRS does make two arguments that require a more detailed response. *First*, the IRS argues the *ACLU* court "expressly rejected . . . [the] suggestion that [c]ourts need not respect 'pre-existing agreements' at all." Def.'s Opp'n at 8. This is misleading. The remainder of the cited

paragraph clarifies how the *ACLU* court rejected precisely the sort of "consistent course of dealing" arguments upon which the IRS and the JCT rely here. *See* 823 F.3d at 665–66. The Circuit only recognized a narrow circumstance where a pre-existing agreement could apply prospectively, namely, when a memorialized agreement "relate[s] specifically to the work product emanating" from a particular congressional inquiry. *Id.* at 666 ("[Congress] effectively stamped its control over the [records the agency was asked to create] when it wrote the terms of the Letter [setting forth that request]."). CoA Institute has acknowledged this kind of manifestation of control can be appropriate. *See, e.g.*, Pl.'s Mem. at 16. But there is no evidence such an agreement (or series of agreements) about *any* of the records at issue here ever existed, or that such an agreement could be used as a blanket to cover all records exchanged between Congress and an agency.

*Second*, the IRS suggests the omission of a legend by a JCT employee is a mere "mistake." It argues the JCT's expectation for a legend to be placed on outgoing correspondence is dispositive and accounts for cases where the legend is missing or does not otherwise apply. *See* Def.'s Opp'n at 9. There are several problems with this argument. Contrary to the IRS's suggestion, the JCT Staff Manual does, in fact, acknowledge that the omission of a legend has *real consequences*: "[D]ocuments may become agency records for FOIA purposes if transferred to an agency without evidence that Congress intended to retain control of the documents." Decl. of Thomas A. Barthold Ex. A. This Court has already expressed skepticism towards the notion of harmless "mistakes" when it comes to IRS-JCT communications. *See* Tr. of Mot. Hr'g Tr. at 88:13–23 (Aug. 24, 2017) [hereinafter "Hr'g Tr."]; *see also id.* 80:05–21; *id.* 89:11–14 ("[O]f course, [the legend] wouldn't need to be included on every communication if [the JCT] can just make a statement that [it] intend[s] all of [its] documents to count; right?").[2]

_____

[2] The IRS's "mistake" argument also is undermined by its own declarant's testimony. Mr. Landes describes a situation where the JCT "accidentally omitted the legend" and "re-sent" a new version "with a legend." 2d Landes Decl.

**B.      The E-TRAK records are "agency records."**

Twenty-nine "topics" of records stored in E-TRAK include either formal inquiry letters containing a legend or various "responses" or "replies" to those JCT correspondences.  Yet the IRS has not met its burden to provide adequate detail to connect any legend-less records to an original JCT inquiry.  *See* Pl.'s Mem. at 22 (citing 2d Landes Decl. ¶ 18(a)).  The agency also has failed "to explain how th[ose] records either constitute a 'reply' or were generated as part of a 'response.'"  *See id.*  Mr. Landes's latest declaration provides no further clarification.  And the IRS's opposition brief sidesteps the dispute and only reiterates the records at issue were "usually" part of a formal IRS response.  *See* Def.'s Opp'n at 6.  The agency does not even bother to address the six "topics" that never included a legend in the first place, *see* Pl.'s Mem. at 22–23 (citing Pl.'s SUMF ¶¶ 43–44; 2d Landes Decl. ¶ 18(b)), or the one "topic" for which the IRS could not locate *any* corresponding JCT inquiry letter.  *See id.* at 23 (Pl.'s SUMF ¶ 45; 2d Landes Decl. ¶ 18(c)).

**C.      The records located in Scott Landes's e-mail and electronic folders are "agency records."**

**1.      Internal IRS and External IRS-JCT Communications**

The IRS's latest arguments about the records stored on Mr. Landes's computer do not reflect serious engagement with CoA Institute's claims.  As for internal IRS communications, the agency states that *any* and *all* intra-agency communications about the JCT qualify as "documents created by the Service *in connection with a response*" to a JCT inquiry.  Def.'s Opp'n at 7.  But even if one construes the terms "reply" and "response" generously—and assumes the agency met its burden to correlate legend-less records with corresponding JCT letters—Mr. Landes still has not justified the withholding of records that have *nothing* to do with a JCT inquiry.  *See, e.g.*, 2d

---

¶ 18(b).  The JCT obviously knows how to correct its "mistakes."  And yet most of the legend-less records here, which do not constitute IRS "replies" to the committee, were never "fixed."

Landes Decl. ¶ 19(a) (e-mail about "the IRS's statutory reporting duties to JCT"). The IRS also fails to address other records identified in CoA Institute's cross-motion, namely, seventy-four pages for which the IRS has been unable to find *any* sort of restrictive legend even in related files. *See* Pl.'s Mem. at 24–25 (citing Pl.'s SUMF ¶ 66; *see* 2d Landes Decl. ¶ 19(a)(ii)).

Turning to records of external correspondence: different records, same story. The IRS fails to offer any serious argument defending its treatment of these 666 pages of e-mail. Even if the agency could demonstrate how legend-less communications fall within the scope of a formal JCT inquiry, Mr. Landes has admitted, in some cases, the IRS was unable to find a relevant legend anywhere. 2d Landes Decl. ¶ 19(b)(ii). Those records cannot fall under congressional control simply because the IRS wills it. *See United We Stand*, 359 F.3d at 603 ("[N]either the IRS's own expectations nor its handling of the document can turn the entire agency-created record into a congressional document. Otherwise, documents that agencies create . . . could become congressional documents even if Congress expressed no intent to keep them secret[.]").

The IRS likewise admits thirty-five pages of "administrative emails" or correspondence about other matters, *see* Pl.'s SUMF ¶ 71, "do not appear to concern a JCT general oversight inquiry" and do not contain a legend. *See* Def.'s Mem. at 19. As CoA Institute previously explained, the "sole basis for their treatment as 'congressional records' is Mr. Barthold's suggestion that the JCT intends to retain control over *anything* 'sent in the course of JCT's official business.'" Pl.'s Mem. at 25–26 (citing Barthold Decl. ¶ 10). That is not enough, but the IRS has offered no further argument.

### 2.    Alleged "Personal Records"

The IRS continues to maintain, in the alternative, that seven pages of records are "personal records." *See* Def.'s Opp'n at 11. Although the parties disagree about which control test would

be most appropriate, that dispute is ultimately inconsequential.  When it comes to the *Burka* and "totality of the circumstances" tests, the D.C. Circuit has acknowledged "there is little daylight between them."  *Cause of Action Institute*, 10 F.4th at 855.  In any case, the IRS is wrong to suggest it is somehow dispositive whether the records reflect "matters of 'official' agency business." Def.'s Opp'n at 11.  That is only one factor among many.  For example, the IRS does not deny these seven pages of records were (1) created on IRS e-mail systems (2) by IRS employees (3) using official IRS e-mail accounts.  *See* 2d Landes Decl. ¶ 19(b)(iv).  Each of those facts is relevant.

Curiously, despite Mr. Landes averring these records are stored on his IRS-issued computer, 2d Landes Decl. ¶ 19(b)(iv), the agency now claims they are not sufficiently "integrated" into official files.  Def.'s Opp'n at 11.  Of course, the IRS offers no legal argument or factual basis to support that contention.  This is hardly surprising.  How else could one describe an agency-licensed e-mail program on agency-issued computer hardware, which ostensibly synchs with an agency server, *except* as an official agency record-keeping system?

Finally, the IRS tries to wave away CoA Institute's argument about the presence of personal information as somehow illogical.  But the agency has not engaged seriously with either *Bureau of National Affairs* or *Consumer Federation of America*.  *See* Pl.'s Mem. at 27.  It is not CoA Institute's view that personal information can merely be redacted, as if the control issue were irrelevant.  Instead, the key principle is that the presence of personal information in a record— information that could otherwise be redacted—is not enough to take a record outside of agency control.  The D.C. Circuit put it quite succinctly: "The inclusion of personal information does not, by itself, take material outside the ambit of FOIA, for personal information can be redacted[.]" *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1496 (D.C. Cir. 1984); *see Consumer Fed. of Am. v. Dep't of Agric.*, 455 F.3d 283, 293 (D.C. Cir. 2006) ("That documents must be

11

redacted to protect personal information does not contravene the conclusion that they are 'agency records.'").  The IRS ignores this principle.

### 3. The Additional "12 email" Records

The IRS omitted any discussion of these "12 email" records in its initial brief, *see* Pl.'s Mem. at 27, and it has failed to address them in its opposition brief with adequate specificity.  The agency instead incorporates its discussion of the e-mails into a broader defense of its withholding of "[m]ore than 1,150 pages of correspondence."  Def.'s Opp'n at 5 & 7.  That is not enough.

As set out in the Second Landes Declaration, the IRS initially provided no evidence about whether these records contained any restrictive legend.  *See* 2d Landes Decl. ¶ 19(c).  Mr. Landes has now clarified that one of the e-mails—which relates to the "prelawsuit processing of [CoA Institute's] FOIA request"—"does not contain a legend."  3d Decl. of Scott S. Landes ¶ 4.  That should end the matter.  In the absence of a legend, or some other contemporaneous extrinsic evidence that demonstrates the JCT intended to retain control, the IRS cannot fall back on general, far-reaching, and pre-existing confidentiality arrangements that treat any and all communications with the JCT as "congressional records."  *United We Stand*, 359 F.3d at 601–602; *Holy Spirit*, 636 F.2d at 841; *Paisley*, 712 F.2d at 696.

With the other eleven e-mails concerning proposed revisions to the IRM and CCDM, Mr. Landes merely states "there is at least one email in the related chain" that contains a legend. 3d Landes Decl. ¶ 4.  That statement is unhelpful by itself.  Congressional control must depend on *when* and *how* the JCT incorporated its legend into the back-and-forth e-mail correspondences with the IRS.  If the JCT did not include a legend on the original e-mail that initiated the chain, and only sought to assert control after the fact, then the legend may be ineffective.  In this respect, Mr. Landes has not provided an inadequate description of the records at hand.

**D.        Secretarial reports under I.R.C. § 6103(p)(3) are "agency records."**

The IRS's defense of its withholding of Section 6103(p) reports is two-fold. *First*, it argues that disclosure of these reports falls within the exclusive authority of the JCT because the statute is "unambiguous." Def.'s Opp'n at 11. *Second*, it claims its prior disclosure of such reports was "inadvertent." *Id.* at 12. Neither argument is compelling.

As far as the plain text of Section 6103 is concerned, although the JCT has discretion to release copies of the reports it receives under subsection (p)(3)(B), *see* I.R.C. § 6103(p)(3)(B), the Tax Code does not explicitly restrict the IRS's own use of the same reports in a manner consistent with taxpayer confidentiality. And Section 6103(p)(3)(C) contains *no* language that reserves control over disclosure to the JCT; on the contrary, it requires publication. *See id.* § 6103(p)(3)(C).

CoA Institute's reading of Section 6103 is buttressed by the IRS's prior disclosure of these kinds of reports—indeed, the very reports at issue now.[3] The agency's only response on this front is that the previous releases were "inadvertent" and CoA Institute is "attempting to seize on a mistake[.]" Def.'s Opp'n at 12. Yet the IRS has failed to point to any factual evidence to support its claim that past disclosure of Section 6103(p)(3)(B) and (C) reports was accidental. There is nothing in the record that shows the IRS tried to reverse its determination, correct its "mistake," or clawback records that were never within its authority to disclose. To be sure, the IRS points to the testimony of its employee, Jonathan Davis. But Mr. Davis, in relevant part, only offers a legal conclusion about the proper interpretation of Section 6103; he says *nothing* about the processing of CoA Institute's FOIA requests or the propriety of the IRS's disclosure of Section 6103(p)(3) reports for 2009, 2010, and 2011. *See* Decl. of Jonathan K. Davis ¶ 4, ECF No. 13-1.

---

[3] The IRS has failed to respond to CoA Institute's argument that the "two communications" being withheld are likely identical to the previously disclosed Section 6103(p)(3) reports. *See* Pl.'s Mem. at 28.

## VI.    The records at issue are not "congressionally privileged."

The IRS questions why CoA Institute raised the issue of congressional privilege.  *See* Def.'s Opp'n at 3 n.1; *cf. id.* at 22 n.6.  Yet it is the IRS that filed supporting materials with objections to disclosure based on the Speech or Debate Clause of the U.S. Constitution.  *See* Barthold Decl. ¶ 21; Barthold Decl. Ex. B.  CoA Institute's response to that potential stealth assertion of privilege is straightforward.

*First*, the JCT is neither a party to this case nor an *amicus curiae*.  Without intervening to assert privilege on its own behalf, any basis for withholding records under the Speech or Debate Clause must fail.  *See* Pl.'s Mem. at 29; *see also Allen v. Dep't of Def.*, 580 F. Supp. 74, 84 (D.D.C. 1983); *Holy Spirit Ass'n for Unification of World Christianity v. Cent. Intelligence Agency*, 558 F. Supp. 41, 44 (D.D.C. 1983).

*Second*, aside from clear procedural infirmity, any assertion of congressional privilege must fail on substantive grounds.  *See* Pl.'s Mem. at 30.  Disclosure in this case would not compromise the ability of the JCT to conduct oversight of the tax system, nor would it implicate the underlying policy concerns associated with the Speech or Debate Clause.  In the end, the IRS concedes it cannot "assert [the Speech or Debate Clause] on Congress's behalf," and the Court "should not" justify any withholding based on congressional privilege.  Def.'s Opp'n at 3 n.1.

## VII.    Exemption 5 does not apply to the remaining e-mail records.

### A.    The IRS cannot use the deliberative-process privilege to withhold records.

The IRS has invoked the deliberative-process privilege to withhold twenty-seven e-mail records about the processing of CoA Institute's FOIA requests, and twenty-five e-mail records concerning revisions to the IRM and CCDM.  *See* Pl.'s SUMF ¶¶ 84 & 88.  The precise grounds for these withholdings is unknown.  As CoA Institute previously explained, the agency has

redacted the substantive portions of its declarant's explanation for why any of these records is either predecisional or deliberative. *See* Cummiskey Decl. ¶ 17(a)–(c), (e)–(k); *see also* Cummiskey Decl. ¶¶ 20 & 22–22(a)–(c); *cf.* Pl.'s Mem. at 32 n.10. Descriptions of the same records in the IRS's *Vaughn* index are similarly redacted. The redaction of the Cummiskey Declaration and IRS's *Vaughn* Index deprives CoA Institute of a fair opportunity to argue against the application of the deliberative-process privilege.

Rather than address the propriety of its redacted submissions—which the IRS has failed to do, *see supra* at p. 2—the agency boldly suggests "Cause of Action does not challenge" the predecisional or deliberative aspects of the records at issue. Def.'s Opp'n at 18–19. That is a gross mischaracterization of CoA Institute's position. The IRS bears the burden of demonstrating how Exemption 5 applies. It has not done that in any public way. It also has failed to describe its efforts to release reasonably segregable non-exempt portions of records. "Simply put, there are bound to be non-deliberative aspects of these e-mails, including factual recitation and references to the IRM and CCDM, which should not be withheld." Pl.'s Mem. at 32 (citing *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008)).

The IRS responds to two other issues raised by CoA Institute in its cross-motion, but neither response is particularly compelling. *First*, the agency protests it "is not withholding any 'processing notes'" and "Cause of Action offers no evidentiary support for its unadorned claim that it has received 'internal correspondence about the processing of its claims' before." Def.'s Opp'n at 19–20. On both counts, the IRS is wrong. The term "processing notes" is widely understood to refer to any records created or obtained by an agency for the purposes of processing a FOIA request. *See, e.g.*, *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 249 (D.D.C. 2012) ("notes prepared and reference materials used by personnel actually

processing the requests"). "Processing notes" would naturally include "emails between multiple Service stakeholders in multiple offices about whether and how to process Cause of Action's request." Def.'s Opp'n at 20.[4] CoA Institute has explained to the Court how it is standard to request and receive processing notes. Hr'g Tr. at 70:12–15. Indeed, CoA Institute has "sent processing note requests to the IRS before" and received records. Hr'g Tr. at 70:17–23.

The IRS sets up a strawman. It cannot seriously maintain that a "processing notes" request is limited to time-keeping entries in a personnel database. *See* Def.'s Opp'n at 19–20. And the agency offers no basis for claiming that disclosure of processing notes always entails a discretionary waiver of Exemption 5. *See id.* at 20. The plain fact, which the IRS fails to address, is that courts are typically reticent to accept "categorical" deliberative-process claims over processing notes, especially in light of an agency's "obligation to segregate factual material from deliberative material." *Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 292–93 (D.D.C. 2016). This is the heart of CoA Institute's argument, and it receives no response from the agency.

*Second*, the IRS claims it "has not asserted that its emails to JCT are both congressional records *and* deliberative process privilege agency records." Def.'s Opp'n at 21. Yet the IRS elsewhere argues it "has not conceded that the fifty-eight records" described in the Cummiskey Declaration—including the records withheld under the deliberative-process privilege—"are agency records[.]" Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts at 17 (Resp. to ¶ 76). Those statements are irreconcilable. Further, after denying it is trying to withhold records as both outside agency control *and* protected by Exemption 5, the IRS admits in the next breath that it is doing exactly what CoA Institute claims: "trying to have it both ways." Def.'s Opp'n at

---

[4] Ironically, after objecting to CoA Institute's supposed failure to offer "evidentiary support" for its discussion of processing notes, the IRS proceeds to define that category in an extremely limited way—*i.e.*, "timekeeping entries . . . of the Disclosure Specialist(s) assigned to process a FOIA matter"—and without any citation to the record.

21.  To wit: the IRS argues "[i]f the records are congressional records, they are not subject to the FOIA," and "if they are agency records they are exempt and need not be released."  *Id.*  This is a textbook case of having one's cake and eating it, too.

The IRS's last contention—that CoA Institute argues the "outcome of the consultation [between the IRS and the JCT] was a foregone conclusion"—misses the mark.  Def.'s Opp'n at 21–22.  CoA Institute never made such an argument.  Although the deliberative nature of records reflecting IRS-JCT deliberations may be undercut by evidence that such consultation was a mere formality, the real problem is that the "JCT's involvement" is "hardly advisory vis-à-vis the 'IRS's own policy-setting deliberations.'"  Pl.'s Mem. at 34 (citation omitted).  At the end of the day, any interaction between the IRS and the JCT reflected in the responsive records will pertain "to the JCT's intention to retain control."  *Id.* at 33.  Thus, the IRS's distinction—which it seems both to embrace and reject—"on the basis of which entity originated an e-mail record is hardly intelligible, at least when the subject-matter of the correspondence is the same."  *Id.*

### B.    The IRS cannot use the attorney-client privilege to withhold records.

The two e-mail records withheld under the attorney-client privilege reflect communications between IRS employees, including an agency attorney, Pl.'s SUMF ¶¶ 97–98, about the processing of CoA Institute's FOIA requests in this case.  As CoA Institute has explained, the mere involvement of an agency attorney in a communication—including a communication about a legal matter—is not enough to bring it within the ambit of the privilege.  *See Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980).

As an initial matter, the IRS has clarified that the withheld records only reflect one-way communication from Mr. Landes *to* the Office of Counsel.  Def.'s Opp'n at 16–17.  Mr. Cummiskey described these records as "email strings," and his description of their precise nature

was redacted.  *See* Cummiskey Decl. ¶ 27.  CoA Institute therefore (and, apparently, mistakenly) understood these "strings" to involve back-and-forth between Mr. Lands and Attorney Goldman, which would seem consistent with the concurrent withholding of the records under the deliberative-process privilege.  *See* Cummiskey Decl. ¶ 17(c).  CoA Institute apologizes for the confusion this may have caused the Court.  Yet even under the standard articulated by the IRS— which is not substantially different from the standard proposed by CoA Institute, *see* Pl.'s Mem. at 34—the agency has not met its burden to apply the attorney-client privilege.

On the IRS's view, it must demonstrate that both e-mail records were created "for the purpose of securing *primarily* either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceedings."  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 308 (D.D.C. 2013) (cleaned up).  The IRS must also show how the records were treated as confidential.  On the first point, the mere invocation of the term "legal advice" in a *Vaughn* index or supporting declaration cannot satisfy the IRS's burden.  *Cf. Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004).  Although Mr. Cummiskey appears to speak to this point—if only briefly— his testimony is redacted, so CoA Institute is unable to reply.  *See supra* at p. 2.

It is still worth noting there is *no* indication in the record that Mr. Landes sought to solicit "legal services" or "assistance in some legal proceeding."  Nor would that make sense.  Mr. Landes's communications predate the filing of the instant lawsuit, and the IRS points to no evidence about any formal "services" provided by the Office of Legal Counsel in regard to FOIA processing.  Insofar as Mr. Cummiskey's declaration suggests Mr. Landes requested specific advice about the "issues being litigated in this case," again, that would be impossible as the e-mails to Attorney Goldman pre-date the filing of the Complaint by roughly half-a-year.  *Cf. Vaughn* Index at Lines 39 & 43 (records dated July 2016) *with* Compl., ECF No. 1 (filed December 2016).

18

It is possible the IRS means Mr. Landes sought some sort of general guidance on the broader question of "agency control." But that runs up against a different wall, which the IRS glosses over in its opposition. Whether the Court is dealing with a client's request or an attorney's response, or some combination of the two, the privilege is not meant to protect "neutral, objective analysis" about legal issues that agency counsel may provide to other components as a matter of course. *See Coastal States Gas Corp.*, 617 F.2d at 863.[5] The redacted Cummiskey Declaration (and the IRS's redacted *Vaughn* index) is too ambiguous on this point.[6] The Cummiskey Declaration also contains testimony that suggests Mr. Landes's e-mails to the Office of Legal Counsel were part of some sort of awareness review, or merely concerned another intra-agency conversation with the Office of Legislative Affairs. *See* Cummiskey Decl. ¶ 17(c). Neither type of communication is protected by attorney-client privilege.

Without something more, the IRS's two short, redacted paragraphs are inadequate to sustain its privilege claim. *See* Cummiskey Decl. ¶¶ 27–28. The agency has not provided a public explanation of the legal advice Mr. Landes sought. It has not addressed the continued confidentiality of that request. And it has entirely omitted any discussion of the ability to segregate ostensibly privileged material from the rest of the two e-mails.

### C. The IRS cannot use the attorney work-product privilege to withhold records.

In its cross-motion, CoA Institute explained the IRS had misapplied the attorney work-product privilege because the records at issue were created before CoA Institute had any

---

[5] The IRS suggests CoA Institute's lengthy discussion of the interplay of decades of D.C. Circuit's somehow undercuts its arguments. *See* Def.'s Opp'n at 18 n.5. On the contrary, the neutral, objective analysis set out in CoA Institute's brief reflects exactly the sort of legal analysis that, if found in an IRS record, should fall outside the privilege, at least in the context of an agency FOIA officer requesting attorney-input on a pending FOIA matter.

[6] The Cummiskey Declaration fails to cite to anything in the public record concerning the intended or actual confidentiality of Mr. Landes's communications, despite the agency's representations to the contrary in its brief. *See* Def.'s Opp'n at 17.

cognizable claim under the FOIA, *see* Pl.'s Mem. at 36, and before any IRS employee had an objectively reasonable expectation of litigation. *See id.* at 36–37. The IRS retorts that CoA Institute has misstated the relevant legal standard and advanced an argument that would result in an absurdity. But it is the IRS's position that will result in absurdity, effectively rendering any work by an attorney on a FOIA matter as privileged. Along the way, the IRS also attempts to ground application of the privilege in CoA Institute's status as a sophisticated and frequent FOIA requester. None of the IRS's arguments is convincing.

*First*, the IRS slightly mischaracterizes CoA Institute's position. It is not that use of the attorney work-product privilege depends on a "perfected legal claim," Def.'s Opp'n at 14, but whether "at the very least *some articulable claim*, likely to lead to litigation, [has] arisen" and served as the motivating factor for creation of the underlying record. *Coastal States Gas Corp.*, 617 F.2d at 865 (emphasis added). In this sense, "the function of the documents [is] the critical issue." *Delaney, Migdail & Young, Chartered v. Internal Revenue Serv.*, 826 F.2d 124, 127 (D.C. Cir. 1987). Further, as far as an articulable claim is concerned, the D.C. Circuit has explained:

> The [*Coastal States*] court rejected the agency's contention that any document prepared by an attorney in the context of an audit was automatically privileged from disclosure as work product. In drawing a line between the two classes of documents, it regarded as pivotal the question whether a specific claim has arisen.

*Id.* Why? Because the existence of a claim is the most effective basis to distinguish between "neutral, objective analyses," on the one hand, and legal advice on "challenges likely to be mounted, . . . potential defenses available to the agency, and the likely outcome." *Id.*

Here, the underlying records, which concern the administrative processing of CoA Institute's FOIA requests, were created *as a routine matter* in the course of the IRS fulfilling its FOIA obligations. Although the records may reflect attorney-created content on "legal" matters, they were not created "*because of* the prospect of litigation" with CoA Institute. *S. of the*

20

*Commonw. of P.R. v. Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987) (emphasis added). Indeed, the IRS has failed to "demonstrate[e] that . . . its lawyers prepared a[ny] document in the course of [its FOIA decision-making] with litigation in mind." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1202 (D.C. Cir. 1991). That much is evident from the Cummiskey Declaration, which—as far as the unredacted portions are concerned—merely describe the records at issue as either communications about the IRS's "draft response letter" or correspondence with CoA Institute and the JCT (which is neither a client of the IRS nor a likely party to FOIA litigation) concerning the same. *See* Cummiskey Decl. ¶ 14(a), (b), (d).

*Second*, the IRS suggests CoA Institute's status as a frequent and sophisticated requester, by itself, was enough to give rise to an objectively reasonable expectation of litigation. The agency attempts to substantiate its argument by reciting a slew of cases brought by CoA Institute against the IRS and other agencies, all of which involved FOIA claims. Def.'s Opp'n at 14 n.4. But it is unclear what these cases are meant to prove. The Supreme Court has explained "the identity of [a] requesting party has no bearing on the merits of his or her FOIA request." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989). By extension, the fact a requester has compelled agency compliance with the FOIA in court in *other instances* should not "put [an agency] on notice that litigation [is] at least 'a real possibility,'" Def.'s Opp'n at 15, each and every time the requester submits a FOIA request. CoA Institute has, in fact, filed hundreds of FOIA requests on which it has not filed suit. The IRS's approach is plainly discriminatory.

It is also untrue that "Cause of Action [was] open about submitting the FOIA request here to test a legal proposition likely to wind up in litigation," at least prior to this lawsuit. Def.'s Opp'n at 15. The IRS points to CoA Institute's FOIA requests, but neither one threatens litigation or contains any statement that would have "guaranteed litigation." *Id.* And contrary to the IRS's

21

representations, those requests *do* seek the "release of specific documents on specific topics of interest." *Id.* That much is clear from the detailed request items. *See* Compl. Exs. 2 & 3, ECF Nos. 44-2 & 44-3.[7]

*Third*, the IRS's position would lead to an absurd result because the agency's broad understanding of when its attorneys reasonably expect litigation contains no real limiting principle. In other words, as CoA Institute suggested in its initial brief, when taken to its logical extension the IRS's argument requires courts to treat "all records created by an attorney that may relate to a pending FOIA matter . . . as work-product." Pl.'s Mem. at 36. "But 'the policies of the FOIA would be largely defeated" if an agency could "withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur[.]'" *Id.* at 36–37 (citing *S. of the Commonw. of P.R.*, 823 F.2d at 587). As far as records reflecting the processing of a FOIA request are concerned, something more is required, namely, the existence of some articulable claim. The IRS admits such a claim was lacking here. That should end the matter.

## D.    The IRS has not satisfied its burden under the "foreseeable harm" standard.

CoA Institute raised a series of points about the IRS's failure to meet its burden under the "foreseeable harm" standard. The agency only responds to two of these arguments.

*First*, the IRS states it may identify and describe harms "categorically." Def.'s Opp'n at 23. Fair enough. But that does not obviate the agency's obligation to provide a detailed explanation of "the foreseeable harm of disclosure for each category" while also attending to the

---

[7] If the administrative record proves anything, it is that the IRS did not think litigation was possible. Although the agency no longer defends its initial position, the IRS originally rejected CoA Institute's FOIA requests as invalid for failure to reasonably describe the requested records. *See* Compl. Exs. 6, ECF No. 44-6. The agency confirmed its denial on appeal and explained CoA Institute did not have appeal rights. *See* Compl. Exs. 12 & 13, ECF No. 44-12 & 44-13. In other words, the IRS did not believe CoA Institute could have filed a lawsuit, let alone an administrative appeal, because it had failed to submit valid FOIA requests in the first instance. Unless the IRS intentionally misrepresented its position during the administrative process, and only denied CoA Institute's requests in order to set up hurdles to CoA Institute prosecuting its requests, it should not be able to argue that it expected an imminent CoA Institute FOIA lawsuit.

"particular" records that have been grouped together.  *See Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018).  Here, the IRS provides no argument for how it has categorized records and justified their withholding under the foreseeable harm standard.  For example, the agency's declarant addresses all records withheld under the attorney-client and attorney work-product privileges together without regard to their subject-matter or other distinguishing characteristics. *See* Cummiskey Decl. ¶¶ 15 & 28.

*Second*, and relatedly, the IRS insists it has provided a specific argument about the harms it expects would result from disclosure.  *See* Def.'s Opp'n at 23–24.  But it does not point to anything in the record to counter CoA Institute's previous arguments.  Instead, the IRS rests its case on the fact that its declarant testified disclosure "*would*" result in harm, as if compliance with the foreseeable harm standard were a mere pleading exercise or word game.  As CoA Institute previously explained, "the IRS's argument" for the attorney-client and attorney work-product privileges "tends to be thin on substance and say little about specific harms beyond "evisceration" of the underlying privileges.  Pl.'s Mem. at 39 (citing Cummiskey Decl. ¶¶ 15 & 28).  And its arguments for the deliberative-process privilege are both "circular," insofar as they presume "the IRS has properly determined that any record reflecting its dealings with the JCT is a 'congressional record' not subject to the FOIA," as well as quite generalized when it comes to describing likely "chill."  Pl.'s Mem. at 39–40.  The IRS provides no rebuttal on this front.

Finally, the IRS has failed to respond to several other arguments.  It does not address CoA Institute's points about compelled waiver, discovery, the FOIA as "litigation neutral," or the need to consider the age of the records.  *See* Pl.'s Mem. at 37–40.  These issues are conceded in CoA Institute's favor.  *See Pinson*, 177 F. Supp. 3d at 81.  The IRS has not satisfied its burden under the "foreseeable harm" standard.

VIII. **The IRS has waived any argument it satisfied its obligation to undertake reasonable efforts to segregate and release non-exempt portions of records.**

CoA Institute previously explained the IRS had failed "even [to] provide a boiler-plate statement that it satisfied its segregability obligations."  Pl.'s Mem. at 40–41.  "Considering the heavy redaction of the agency's *Vaughn* index, its selective (and seemingly strategic) redaction of the Cummiskey Declaration, and its withholding in full of *all* admitted agency records under Exemption 5," it is unlikely the IRS ever undertook "a diligent line-by-line review."  *Id.* at 41. The agency fails to respond to this argument and does not offer any new testimony from its declarants to rebut CoA Institute's claims.  The matter is therefore conceded in CoA Institute's favor.  *See Pinson*, 177 F. Supp. 3d at 81.

The absence of counterargument on the IRS's part is not inconsequential.  "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Mere allegations of complying, absent an adequate showing that "explain[s] in detail which portions" of a record "are disclosable and which are allegedly exempt," cannot win the day.  *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005).

IX. **CoA Institute's request for *in camera* review is unopposed.**

The IRS has failed to respond to CoA Institute's request for *in camera* review.  That request is thus unopposed.  For the reasons set out in CoA Institute's cross-motion, *see* Pl.'s Mem. at 8– 10; *id.* at 41–42, as well as above, the Court should order the IRS to submit unredacted version of the records withheld under Exemption 5 for the Court's direct consideration.

24

## CONCLUSION

CoA Institute respectfully requests the Court to deny the IRS's motion for summary judgment and to grant CoA Institute's cross-motion for summary judgment.  CoA Institute further requests the Court to order the IRS to re-process and produce all responsive records in their entirety within the next twenty days.

Dated: February 2, 2022

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
(D.C. Bar No. 1024362)
Lee A. Steven
(D.C. Bar No. 468543)

CAUSE OF ACTION INSTITUTE
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 482-4182
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff CoA Institute*
