IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,<br>Plaintiff,<br>v.<br>INTERNAL REVENUE SERVICE,<br>Defendant. | Case No. 1:16-cv-2354 |

**DECLARATION OF THOMAS A. BARTHOLD**

1. I am the Chief of Staff of the Joint Committee on Taxation ("JCT"). I was appointed Chief of Staff in May 2009 and have served in that role since that time. I have worked for the JCT since 1987. Between September 2004 and May 2009, I served as Deputy Chief of Staff. I also served as Acting Chief of Staff from November 2005 until September 2007.

2. The JCT is the oldest joint committee of the Congress and its membership and authority are established by statute. *See* 26 U.S.C. § 8001, et seq. In 1926, the JCT was created to address "the need for the institution of a procedure by which the Congress could be better advised as to the systems and methods employed in the administration of the internal revenue laws with a view to the needs for legislation in the future, simplification and clarification of administration, and generally a closer understanding of the detailed problems with which both the taxpayer and the Bureau of Internal Revenue are confronted." S. Rep. No. 69-52, at 14 (1926). The JCT is composed of five Representatives who are members of the House Committee on Ways and Means and five Senators who are members of the Senate Committee on Finance. It is expected that Representative Kevin Brady of Texas will be elected Chairman of the JCT and Senator Orrin G. Hatch will be elected Vice Chairman for the first session of the 115th Congress.

3. To carry out its responsibilities, the JCT employs a nonpartisan, professional staff that includes lawyers, certified public accountants, and economists. The JCT professional staff is closely involved with every aspect of the tax legislative process. Among other work relating to the tax legislative process, the JCT professional staff (1) assists congressional tax-writing committees and individual Members of Congress with development and analysis of legislative proposals; (2) prepares official revenue estimates for all tax legislation considered by the Congress;[1] (3) drafts legislative histories for tax-related bills; and (4) investigates various aspects of the federal tax system to assist with the legislative and oversight process.

4. In order for the tax-writing committees and Members to make informed decisions about potential changes to the tax law, they must understand how the current tax law is functioning and being administered. One aspect of JCT's oversight of the tax system is monitoring the actions and positions taken by the Internal Revenue Service ("IRS") to ensure that the tax system is being administered in a fair, appropriate, and efficient manner that achieves the legislative intent of the Congress. Thus, the JCT governing statute provides that one of the duties of the JCT is to investigate "the operation and effects of the Federal system of internal revenue taxes" and "the administration of such taxes by the Internal Revenue Service or any executive department, establishment, or agency charged with their administration." 26 U.S.C. §§ 8022(1)(a), (b). The JCT is also directed to report, from time to time, the results of its investigations and make recommendations to the House Committee on Ways and Means, the Senate Committee on Finance,

[1] *See* 2 U.S.C. § 601(f) ("For the purposes of revenue legislation which is income, estate and gift, excise, and payroll taxes (i.e., Social Security), considered or enacted in any session of Congress, the Congressional Budget Office shall use exclusively during that session of Congress revenue estimates provided to it by the Joint Committee on Taxation.").

and the full House and Senate. *Id.* § 8022(3). In addition, the JCT may conduct investigations at the request of the tax-writing committees or individual Members.

5. In furtherance of its investigative and legislative responsibilities and activities, the JCT has constitutional and statutory authority to obtain various types of information from the IRS (and other executive agencies), and the IRS is "authorized and directed" to provide the information requested.[2] Pursuant to this authority, JCT policy staff frequently requests information from the IRS in the course of their official business. The JCT makes requests for information to the IRS both through formal letters from the Chief of Staff to the Commissioner of the IRS, as well as through informal emails and telephone calls from the JCT professional staff to the IRS. Similarly, the IRS may respond to JCT inquiries through formal letters or through informal emails, telephone calls, and in-person meetings.

6. Because of the JCT's unique role in drafting tax legislation with vast financial implications and overseeing the IRS and the administration of the tax code, all of the work the JCT does for the tax-writing committees or Members of Congress is considered highly confidential.

---

[2] *See* 26 U.S.C. § 8023; *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504-05 & n.15 (1975) ("This Court has often noted that [Congress's] power to investigate is inherent in the power to make laws because '(a) legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.' . . . It also has been held that the subpoena power may be exercised by a committee acting, as here, on behalf of one of the Houses. Without such power the Subcommittee may not be able to do the task assigned to it by Congress.") (citations omitted); *Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or decide upon due investigation not to legislate . . . . The scope of the power of inquiry, in short, is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution."). By statute, the Secretary of the Treasury is also specifically required to provide the Chairman or the Chief of Staff of the JCT with tax returns or tax return information upon request. 26 U.S.C. § 6103(f)(2). Such returns and return information are confidential and disclosing them is prohibited except as specifically permitted by another provision of the Internal Revenue Code. 26 U.S.C. § 6103(a).

Thus, it is critical that all of the JCT's communications with the IRS regarding matters of official JCT business and all records created by the IRS in response to such communications be protected from compelled public disclosure. The JCT must be able to retain control over its investigations for effective oversight and consideration of potential legislation. Such control includes the determination of whether, when, and how information about its investigations will become publicly available. Release of communications regarding JCT inquiries, including records relating to the IRS's responses, would have a detrimental effect on the JCT's ability to obtain needed information from the IRS pursuant to its constitutional and statutory authority.

7. Indeed, when the JCT makes an inquiry of the IRS on behalf of an individual Member, the JCT will not disclose that inquiry or the IRS's response to any other Member, let alone the general public. It is vitally important that Members feel free to confidentially explore tax policy ideas and their effects. Unauthorized disclosure relating to a Member's inquiries could force the Member to prematurely defend a nascent idea that is not yet fully developed and may never result in legislation. Consequently, preserving the confidentiality of the JCT's communications with the IRS and all records created by IRS in response to such communications is necessary to maintain the confidential flow of information that allows Members to obtain the information necessary to formulate legislative proposals.

8. Moreover, unauthorized disclosure of the JCT's communications with the IRS or of records created by the IRS in response to such communications could unintentionally impact the financial markets by prematurely revealing legislative proposals. The policy designs over which the Members deliberate can have the effect of creating significant changes in wealth, and sophisticated investors often devote considerable resources to attempting to gain advance knowledge of potential changes in tax law. The confidentiality of JCT's investigations,

deliberations, and communications is critical to preventing such individuals and entities from structuring their business transactions in anticipation of possible changes in the tax law or from gaining an unfair advantage over other taxpayers.

9. In addition, with respect to JCT's oversight responsibilities, unauthorized disclosure of JCT's communications with the IRS or of records created by the IRS in response to such communications could reveal potential vulnerabilities in the IRS's administration of the tax code. If these records were disclosed, taxpayers might be enabled to exploit that information in attempts to evade taxes or obtain erroneous refunds. Again, the confidentiality of JCT's communications with the IRS and of records created by the IRS in response is essential to ensuring that such information is not disclosed in an inappropriate manner.

10. Accordingly, the JCT's longstanding policy and practice is that all communications from the JCT to the IRS and the Department of the Treasury sent in the course of JCT's official business, and all records compiled or prepared by the IRS and Treasury in connection with such communications, constitute congressional records, not agency records, and remain subject to congressional control even when in the physical possession of an agency. Accordingly, such congressional records must be segregated from agency records. In order to maintain the confidentiality of such records, the JCT has taken several steps to emphasize that they constitute congressional records and that JCT retains control over them while they are in the physical custody of the IRS.

11. The JCT communicates this longstanding policy and practice to the IRS and Treasury. For example, it is JCT policy to include a legend on all correspondence to the IRS sent in the course of JCT's official business, including both letters and emails. This policy is reflected in JCT's current staff policy manual, which has been in effect since 2007. Pertinent excerpts of

the manual are attached as Exhibit A. The manual reinforces the importance of maintaining the confidentiality of JCT's work, and instructs that "the . . . legend must be included on written communications (including electronic mail) with the IRS, Treasury, or other Federal agenc[ies]."

12. In 2000, the JCT revised its legend to clearly and specifically manifest its intent to retain control over all such JCT communications to the IRS and all records created by the IRS in connection with such communications. Since that time, the legend has stated:

> This document is a record of the Joint Committee on Taxation ("Joint Committee") and is entrusted to the [Department of the Treasury/IRS] for your use only in handling this matter. Additionally, any documents created by the [Department of the Treasury/IRS] in connection with a response to this Joint Committee document, including (but not limited to) any replies to the Joint Committee, are records of the Joint Committee and shall be segregated from agency records and remain subject to the control of the Joint Committee. Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom of Information Act. Absent explicit Joint Committee authorization, access to this document and any responsive documents shall be limited to [Treasury/IRS] personnel who need such access for the purposes of providing information or assistance to the Joint Committee.

13. When the JCT sends a formal letter to the IRS, JCT's policy and practice is for this legend to be included in the last paragraph of the letter. Since I have been Chief of Staff, I have continued the longstanding and routine JCT practice of including the legend in all letters that I have sent to the IRS in the course of JCT's official business.

14. When the JCT staff communicates with the IRS via email, the JCT's policy and practice is for this legend to be included at the end of the email. As part of the JCT's new-employee training, JCT professional staff are specifically instructed to include this legend on every email to the IRS sent in the course of JCT's official business. Additionally, I send periodic emails to all JCT professional staff reminding them to include the legend on all such emails to the IRS.

15. JCT staff endeavors to include the legend on all correspondence sent in the course of JCT's official business, although, given time sensitivities and the volume of correspondence

with the IRS, occasionally JCT staff may forget to include the legend. However, the accidental failure to include the legend on a communication in no manner negates JCT's intent to maintain control over the communication or the IRS records created in response to that communication. This has long been JCT's policy, including during all times relevant to this case. In recognition of JCT's longstanding policy in this regard, the IRS has codified that policy in its Chief Counsel Directives Manual provision 35.5.4.9, which provides that "the absence of the legend is not legally determinative," and "[i]f a JCT document fails to contain a legend, generally, IRS practice is to treat the JCT document and any IRS response thereto as a congressional record."

16. Consistent with the JCT and IRS policies expressed above, in the instances where the JCT staff relates a request for information to the IRS via phone call or in-person communication, it is similarly JCT's intent that all records created by the IRS in response are to remain under the control of the JCT.

17. Each year, generally 90 days after the close of the calendar year, the IRS provides to the JCT a consolidated report, consisting of a public and a non-public component, regarding certain accountings for the disclosure of returns and return information.[3] Consistent with Congress's statutory directive, this report, and any documents created by the IRS in the course of preparing them, are prepared for the benefit and use of Congress and are congressional records subject to the control of the JCT. JCT is authorized to prescribe the content and form of the report. *See* 26 U.S.C. 6103(p)(3)(B) ("The Secretary shall, within 90 days after the close of each calendar year, furnish to the Joint Committee on Taxation a report with respect to, or summary of, the

[3] 26 U.S.C. § 6103(p)(3)(B) (a private report), and 26 U.S.C. § 6103(p)(3)(C) (directing the IRS to "furnish to the Joint Committee on Taxation for disclosure to the public a report with respect to the records or accounting described in subparagraph (A) . . . ."). The JCT formats the component of the report prepared by the IRS in accordance with section 6103(p)(3)(C) into a separate document and then makes the document publicly available on the JCT website.

records or accountings described in subparagraph (A) in such form and containing such information as such joint committee or the Chief of Staff of such joint committee may designate."). Before the IRS prepares the report, JCT staff may have conversations with IRS personnel providing direction as to aspects of the report that may need further clarification or specification, and after JCT receives the IRS's report, JCT staff may communicate follow-up questions to the IRS. It is JCT policy to include the legend on any letters or emails containing such communications. It is JCT, not the IRS, that controls the decisions regarding whether, when, and to what extent to make the reports public. *See id.* ("Such report or summary, or any part thereof, may be disclosed by such joint committee to such persons and for such purposes as the joint committee may, by record vote of a majority of the members of the joint committee, determine.").

18. During my tenure as Chief of Staff and prior to that time, the Chiefs of Staff and other JCT staff have had multiple conversations with IRS personnel informing them of JCT's intent to retain control over all of JCT's communications sent in the course of its official business with the IRS and over all the records created by the IRS in connection with such communications, regardless of the manner in which JCT makes such communications and regardless of whether each specific JCT communication includes the legend. I and other JCT staff have repeatedly and consistently directed the IRS to maintain such records in segregated files. If JCT discovers that IRS personnel have neglected to segregate such a record, JCT immediately instructs the IRS to correct its error. Consistent with JCT's instruction, my understanding is that access to such records is limited to IRS personnel who need access for purposes of assisting the JCT, and that the IRS cannot use or dispose of such records as it sees fit.

19. Reflecting the JCT's longstanding position, routinely communicated to the IRS, the IRS has recognized in its Internal Revenue Manual that it is Congress's intent that all records

created by IRS in response to correspondence from the JCT remain under the control of the JCT and be characterized as congressional records. *See* I.R.M. § 11.3.13.5.3(4) (Oct. 26, 2007) ("Whenever the Joint Committee's inquiry letter includes a legend, that letter remains a congressional record. In addition, any records created by the IRS in connection with the agency's response to the Joint Committee's inquiry, including (but not limited to) the IRS reply letter, and any records created by the IRS as a result of, or in response to, that inquiry, will also be treated as congressional records. Accordingly, the inquiry letter from the Joint Committee, and any records created by the IRS as result of, or in response to, that inquiry, are not agency records responsive to a FOIA request and must not be released under the FOIA."). The JCT has relied on the IRS's policy in its course of dealing with the IRS.

20. Also consistent with JCT's longstanding position, the Internal Revenue Manual underscores that the protected congressional records created in response to a JCT inquiry include not just the IRS's formal response to JCT, but *any* records created by the IRS in response, including records relating to the documents compiled by the IRS in responding to JCT's inquiry. The manual explains that "[d]epending upon the wording of the FOIA request, copies of records created and maintained by the IRS in the normal course of its operations that are subsequently provided to the Joint Committee in response to a general inquiry may be . . . considered congressional records." I.R.M. § 11.3.13.5.3(6) (Oct. 26, 2007). For example, "[i]f the FOIA request specifically asks for records reviewed by the Joint Committee, the disclosure of any records, or even the acknowledgement that these records exist in the context of a Joint Committee inquiry, may confirm that the Joint Committee had exercised its general oversight responsibilities." *Id.* § 11.3.13.5.3(6)(a). Thus, such compilations of documents are congressional records even though,

individually, some of the documents may have been created by the IRS in the normal course of its operations.

21. On August 3, 2016, I wrote the Commissioner of the IRS concerning Cause of Action's FOIA requests. My letter is attached as Exhibit B. I informed him that the records sought by the requests "relate to JCT legislative information-gathering, which concerned legislative and oversight work performed by the JCT." I reminded him that, consistent with the well-established practices of JCT and IRS discussed above, the records sought by Cause of Action "are the records of the JCT and remain subject to the control of the JCT, and that has been the longstanding and repeatedly expressed position of the JCT." I further informed him that JCT objects to disclosure of the records "because, among other reasons, the documents sought are congressional records" and "are absolutely privileged from production under the Speech or Debate Clause of the Constitution, U.S. Const. art. I, § 6, cl. 1."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this the 17th day of February, 2017, in Washington, D.C.

Thomas A. Barthold

Thomas A. Barthold

# Joint Committee on Taxation

# POLICY MANUAL

JULY 1, 2007

Exhibit
A

# Joint Committee on Taxation

# POLICY MANUAL

**Issued to:** ______________________________

**Date:** ______________________________

CONTENTS

Page

I. INTRODUCTION AND DISCLAIMER .......... 1

II. THE JOINT COMMITTEE ON TAXATION .......... 2
A. [redacted] .......... 2
B. [redacted] .......... 3
C. [redacted] .......... 3
D. [redacted] .......... 3

III. ETHICAL RESPONSIBILITIES .......... 4
A. [redacted]
B. Joint Committee Staff Rules and Rules Relating to Tax Return Information .......... 5
1. Confidentiality .......... 5
(a) In general .......... 5
(b) Tax returns and return information .......... 5
(c) Protection of Joint Committee documents as Congressional records .......... 5
(d) Member proposals and estimates .......... 6
2. [redacted]

IV. KEY POLICIES .......... 13
[redacted]

V. GENERAL OFFICE POLICIES AND PROCEDURES .......... 17
A. [redacted]

## B. Joint Committee Staff Rules and Rules Relating to Tax Return Information

### 1. Confidentiality

**In general**

Joint Committee staff often have access to information of a sensitive or confidential nature. It is critical that confidentiality be maintained by all staff members, that no disclosure of confidential information be made to anyone except as required in the performance of work, and that no use be made of confidential information for personal gain or advantage, or for the harm of others.

[redacted]

[redacted]

**Tax returns and return information**

Section 6103 of the Code grants the Joint Committee staff access to Federal tax returns and return information. Code section 6103 also provides for strict confidentiality of these returns and information. Unauthorized disclosure is a felony punishable by a fine of up to $5,000 and/or five years in jail (sec. 7213). Civil penalties may also apply. Accordingly, any Joint Committee staff with returns or return information must keep such information confidential and secure.

A detailed description of requirements and penalties under section 6103 is contained in Appendix A.

**Protection of Joint Committee documents as Congressional records**

The Joint Committee staff often needs to coordinate with Treasury and the IRS or other Federal agencies (such as the Department of Labor). Records of Federal agencies are subject to disclosure under the Freedom of Information Act ("FOIA") unless an exception applies. Congressional documents, including those of the Joint Committee staff, generally are not subject to disclosure under FOIA. However, such documents may become agency records for FOIA purposes if transferred to an agency without evidence that Congress intended to retain control of the documents. In order to protect Joint Committee documents as Congressional documents, the following legend must be included on written communications (including electronic mail) with the IRS, Treasury, or other Federal agency.

> This document is a record of the Joint Committee on Taxation ("Joint Committee") and is entrusted to the Department of the Treasury [or name of other Federal agency] for your use only in handling this matter. Additionally, any documents created by the Department of the Treasury [or name of other Federal

agency] in connection with a response to this Joint Committee document, including (but not limited to) any replies to the Joint Committee, are records of the Joint Committee and shall be segregated from agency records and remain subject to the control of the Joint Committee. Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom of Information Act. Absent explicit Joint Committee authorization, access to this document and any responsive documents shall be limited to Treasury [or name of other Federal agency] personnel who need such access for the purposes of providing information or assistance to the Joint Committee.

The legend is not required for communications SOLELY within Joint Committee staff (including Refund Office staff) or with other Hill staff, as Congress is not subject to FOIA; however, if a Treasury, IRS, or other Federal agency recipient is among the addressees, the legend must be included.

**Member proposals and estimates**

Member communications with the Joint Committee must be treated as confidential communications. [redacted]

**2.** [redacted]

[redacted]

**3.** [redacted]

[redacted]

[redacted]

114TH CONGRESS, 2ND SESSION

SENATE
ORRIN G. HATCH, UTAH, CHAIRMAN
CHUCK GRASSLEY, IOWA
MIKE CRAPO, IDAHO
RON WYDEN, OREGON
DEBBIE STABENOW, MICHIGAN

HOUSE
KEVIN BRADY, TEXAS, VICE CHAIRMAN
SAM JOHNSON, TEXAS
DEVIN NUNES, CALIFORNIA
SANDER M. LEVIN, MICHIGAN
CHARLES B. RANGEL, NEW YORK

THOMAS A. BARTHOLD
CHIEF OF STAFF

BERNARD A. SCHMITT
DEPUTY CHIEF OF STAFF

**Congress of the United States**
JOINT COMMITTEE ON TAXATION
502 FORD HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6453
(202) 225-3621
http://www.jct.gov

AUG 03 2016

Honorable John Koskinen
Commissioner, Internal Revenue Service
1111 Constitution Avenue, Room 5503
Washington, DC 20224

**Re: Speech or Debate Clause Assertion**

Dear Mr. Koskinen:

I write concerning two Freedom of Information Act ("FOIA") requests, each dated June 22, 2016, that the Internal Revenue Service ("IRS") received from counsel for Cause of Action Institute (the "Requests"). The Joint Committee on Taxation ("JCT") recently became aware that the Requests seek the production of a broad scope of Joint Committee on Taxation records, dated January 21, 2009 to present (the "JCT Records"), including but not limited to "[a]ll records created by or originating at the JCT . . . provided to the IRS," and nearly all communications between the IRS and JCT. *See* Ex. A, FOIA Request #1, at 2; *see also* Ex. B, FOIA Request #2, at 2. Please be advised that the JCT Records relate to JCT legislative information-gathering, which concerned legislative and oversight work performed by the JCT.

As acknowledged in paragraph 11.3.13.5.4 of the IRS manual, all JCT documents and communications, and all IRS responses to JCT requests for information in the IRS's possession, including the JCT Records, are congressional records. Indeed, many of the JCT's legislative information-gathering requests to the IRS specifically state that its information requests and any responses thereto, which includes the JCT Records, are the records of the JCT and remain subject to the control of the JCT, and that has been the longstanding and repeatedly expressed position of the JCT. This longstanding position has been incorporated in the IRS manual, which provides that such JCT Records "are not agency records for the purpose of FOIA." *See* IRS manual at 11.3.13.5.4.

The JCT respectfully objects to any IRS disclosure of the JCT Records because, among other reasons, the documents sought are congressional records and, additionally, in response to the Request, are absolutely privileged from production under the Speech or Debate Clause of the Constitution, U.S. Const. art. I, § 6, cl. 1. Accordingly, the JCT expects that the IRS will decline to produce the JCT Records on the grounds that they (i) are not IRS documents to produce, and (ii) are legislatively privileged, in addition to any other grounds the IRS may assert.

**Exhibit**
B

Congress of the United States
JOINT COMMITTEE ON TAXATION
Washington, DC 20515-6453

Honorable John Koskinen
Commissioner, Internal Revenue Service



Please do not hesitate to contact me should you have any questions.

Sincerely,

Thomas A. Barthold

Thomas A. Barthold

cc: Drita Tonuzi, Associate Chief Counsel, Procedure and Administration
Honorable Orrin G. Hatch, Chairman
Honorable Kevin Brady, Vice Chairman
Chris Campbell
David Stewart

Enclosures - Exhibit A
Exhibit B

CAUSE of ACTION INSTITUTE
Advocates for Government Accountability
A 501(c)(3) Nonprofit Corporation
1875 Eye Street, NW, Suite 800, Washington, DC 20006

EXHIBIT A
FOIA Request #1

June 22, 2016

INTERNAL REVENUE SERVICE
Data Service
JUN 28 2016
Centralized Processing Unit
Atlanta, GA

**VIA CERTIFIED MAIL & EMAIL**

Ms. Rhonda O'Reilly
IRS FOIA Request
HQ FOIA
Stop 211
P.O. Box 621506
Atlanta, GA 30362-3006

Ed Killen, Director
Privacy, Governmental Liaison and Disclosure ("PGLD")
ATTN: PGLD Office of Disclosure FOIA & Program Operations
Internal Revenue Service, OS:P
401 W. Peachtree Street
Atlanta GA 30308-3510
E-mail: edward.t.killen@irs.gov

**Re:** **Freedom of Information Act Request**

Dear Ms. O'Reilly and Mr. Killen:

I write on behalf of Cause of Action Institute ("CoA Institute"), a nonprofit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair.[1] In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability. To that end, we are examining IRS treatment of records relating to the Joint Committee on Taxation ("JCT") and IRS operations vis-à-vis inquiries from, and responses or reports to, the JCT.[2]

---

[1] *See* CAUSE OF ACTION INST., *About*, www.causeofaction.org/about (last visited June 21, 2016).
[2] *See generally* Dep't of the Treasury, Internal Revenue Serv., Chief Counsel Notice CC-2016-003: FOIA Requests for Joint Committee on Taxation Information (Dec. 18, 2015), *available at* http://1.usa.gov/28LAUyF.

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, CoA Institute hereby requests access to the following records for the time period of January 21, 2009 to the present:[3]

1. All communications between the IRS and the JCT that contain the following terms: "@irscounsel.treas.gov," "@irs.gov," "6103," "6103(g)," "6103(c)," "6103(p)," "6103(h)," "6103(i)," "Cause of Action," "detailee," "DOJ," "Justice," "@usdoj.gov," "@who.eop.gov," "White House," "tax checks," "Julie Schwartz," "A M Gulas," "Norah Bringer," "Andrew Strelka," "equities," "White House counsel," "avoid," "evade," "301.6103(c)-1," "information collection," "Paperwork Reduction," "Privacy Act," "system of records," "Federal Records Act," "7805(c)," "602.101," "11.3.31-1," "Form 8821," "Form 1040," "Form 4416," "Form 13362," or "Form 13775."

Please exclude from the scope of the above request any records concerning 26 U.S.C. §§ 6045, 6405, and 8022(2).

**Request for a Public Interest Fee Waiver**

CoA Institute requests a waiver of any and all applicable fees. The FOIA and applicable IRS regulations provide that the IRS shall furnish requested records without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4]

In this case, the requested records would unquestionably shed light on the "operations or activities of the government" by revealing how the IRS treats JCT records—or IRS records provided to the JCT—under FOIA. These sorts of records have not been widely distributed, and their disclosure and dissemination would contribute to public understanding about IRS FOIA operations and the impact of recent Chief Counsel guidance on the treatment of JCT-related records.[5] Indeed, there is significant public interest in understanding why the Chief Counsel issued this guidance without notice-and-comment rulemaking so as to designate certain agency records as "congressional records." Further, there is public interest in learning more about the JCT and its role with regard to the IRS. This is particularly true when the IRS exercises its discretion to remove records from public access absent the JCT's clear instruction that such records are to be treated outside the scope of the FOIA. Finally, as a threshold matter, there is public interest in understanding whether the JCT has constitutional authority to direct the IRS to treat certain agency records as "legislative records" for the purposes of FOIA administration.

CoA Institute has both the intent and ability to make the results of this request available to a reasonably broad public audience through various media. Its staff has significant experience and expertise in government oversight, investigative reporting, and federal public interest litigation. These professionals will analyze the information responsive to this request, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, whether

---

[3] For the purposes of this request, the term "present" should be construed as the date on which the agency begins its search for responsive records. *See Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).

[4] 5 U.S.C. § 552(a)(4)(A)(iii); 26 C.F.R. § 601.702(f)(2); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115–19 (D.C. Cir. 2015) (discussing proper application of public-interest fee waiver test).

[5] *See supra* note 2.

through the Institute's regularly published online newsletter, memoranda, reports, or press releases.[6] In addition, as CoA Institute is a non-profit organization, as defined under Section 501(c)(3) of the Internal Revenue Code, it has no commercial interest in making this request.

**Request To Be Classified as a Representative of the News Media**

For fee status purposes, CoA Institute also qualifies as a "representative of the news media" under FOIA.[7] As the D.C. Circuit recently held, the "representative of the news media" test is properly focused on the requestor, not the specific FOIA request at issue.[8] CoA Institute satisfies this test because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.[9] Although it is not required by the statute, CoA Institute gathers the news it regularly publishes from a variety of sources, including FOIA requests, whistleblowers/insiders, and scholarly works. It does not merely make raw information available to the public, but rather distributes distinct work products, including articles, blog posts, investigative reports, newsletters, and congressional testimony and statements for the record.[10] These distinct works are distributed to the public through various media, including the Institute's website, Twitter, and Facebook. CoA Institute also provides news updates to subscribers via e-mail.

The statutory definition of a "representative of the news media" contemplates that organizations such as CoA Institute, which electronically disseminate information and publications via "alternative media[,] shall be considered to be news-media entities."[11] In light of the foregoing, numerous federal agencies have appropriately recognized the Institute's news media status in connection with its FOIA requests.[12]

---

[6] *See Cause of Action*, 799 F.3d at 1125–26 (holding that public interest advocacy organizations may partner with others to disseminate their work).

[7] 5 U.S.C. § 552(a)(4)(A)(ii)(II); 26 C.F.R. § 601.702(f)(3)(ii)(B).

[8] *See Cause of Action*, 799 F.3d at 1121.

[9] The IRS definition of "representative of the news media," 26 C.F.R. § 601.702(f)(3)(ii)(B), is in conflict with the statutory definition and controlling case law. The agency has improperly retained the outdated "organized and operated" standard that Congress abrogated when it provided a statutory definition in the OPEN Government Act of 2007. *See Cause of Action*, 799 F.3d at 1125 ("Congress . . . omitted the 'organized and operated' language when it enacted the statutory definition in 2007. . . . [Therefore,] there is no basis for adding an 'organized and operated' requirement to the statutory definition."). Under either definition, however, CoA Institute qualifies as a representative of the news media.

[10] *See, e.g.*, *Cause of Action Testifies Before Congress on Questionable White House Detail Program*, CAUSE OF ACTION (May 19, 2015), *available at* http://goo.gl/Byditl; CAUSE OF ACTION, 2015 GRADING THE GOVERNMENT REPORT CARD (Mar. 16, 2015), *available at* http://goo.gl/MqObwV; *Cause of Action Launches Online Resource: ExecutiveBranchEarmarks.com*, CAUSE OF ACTION (Sept. 8, 2014), *available at* http://goo.gl/935qAi; CAUSE OF ACTION, GRADING THE GOVERNMENT: HOW THE WHITE HOUSE TARGETS DOCUMENT REQUESTERS (Mar. 18, 2014), *available at* http://goo.gl/BiaEaH; CAUSE OF ACTION, GREENTECH AUTOMOTIVE: A VENTURE CAPITALIZED BY CRONYISM (Sept. 23, 2013), *available at* http://goo.gl/N0xSvs; CAUSE OF ACTION, POLITICAL PROFITEERING: HOW FOREST CITY ENTERPRISES MAKES PRIVATE PROFITS AT THE EXPENSE OF AMERICAN TAXPAYERS PART I (Aug. 2, 2013), *available at* http://goo.gl/GpP1wR.

[11] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[12] *See, e.g.*, FOIA Request CFPB-2016-222-F, Consumer Fin. Prot. Bureau (Apr. 20, 2016); FOIA Request CFPB-2016-207-F, Consumer Fin. Prot. Bureau (Apr. 14, 2016); FOIA Request 796939, Dep't of Labor (Mar.. 7, 2016); FOIA Request 2015-HQFO-00691, Dep't of Homeland Sec. (Sept. 22, 2015); FOIA Request F-2015-12930, Dept. of State (Sept. 2, 2015); FOIA Request 14-401-F, Dep't of Educ. (Aug. 13, 2015); FOIA Request HQ-2015-01689-F, Dep't of Energy (Aug. 7, 2015); FOIA Request 2015-OSEC-04996-F, Dep't of Agric. (Aug. 6, 2015); FOIA Request OS-2015-00419, Dep't of Interior (Aug. 3, 2015); FOIA Request 780831, Dep't of Labor (Jul 23, 2015); FOIA Request 15-05002, Sec. & Exch. Comm'n (July 23, 2015); FOIA Request 145-FOI-13785, Dep't of Justice (Jun. 16, 2015); FOIA Request 15-00326-F, Dep't of Educ. (Apr. 08, 2015); FOIA Request 2015-26, Fed. Energy Regulatory Comm'n (Feb. 13, 2015);

**Record Preservation Requirement**

CoA Institute requests that the disclosure officer responsible for the processing of this request issue an immediate hold on all records responsive, or potentially responsive, to this request, so as to prevent their disposal until such time as a final determination has been issued on the request and any administrative remedies for appeal have been exhausted. It is unlawful for an agency to destroy or dispose of any record subject to a FOIA request.[13]

**Record Production and Contact Information**

In an effort to facilitate document review, please provide the responsive documents in electronic form in lieu of a paper production. If a certain portion of responsive records can be produced more readily, CoA Institute requests that those records be produced first and the remaining records be produced on a rolling basis as circumstances permit.

If you have any questions about this request, please contact me by telephone at (202) 499-4232 or by e-mail at ryan.mulvey@causeofaction.org. Thank you for your attention to this matter.

Ryan P. Mulvey

RYAN P. MULVEY
COUNSEL

---

FOIA Request HQ-2015-00248, Dep't of Energy (Nat'l Headquarters) (Dec. 15, 2014); FOIA Request F-2015-106, Fed. Commc'n Comm'n (Dec. 12, 2014); FOIA Request HQ-2015-00245-F, Dep't of Energy (Dec. 4, 2014); FOIA Request F-2014-21360, Dep't of State, (Dec. 3, 2014); FOIA Request LR-2015-0115, Nat'l Labor Relations Bd. (Dec. 1, 2014); FOIA Request 201500009F, Exp.-Imp. Bank (Nov. 21, 2014); FOIA Request 2015-OSEC-00771-F, Dep't of Agric. (OCIO) (Nov. 21, 2014); FOIA Request OS-2015-00068, Dep't of Interior (Office of Sec'y) (Nov. 20, 2014); FOIA Request CFPB-2015-049-F, Consumer Fin. Prot. Bureau (Nov. 19, 2014); FOIA Request GO-14-307, Dep't of Energy (Nat'l Renewable Energy Lab.) (Aug. 28, 2014); FOIA Request HQ-2014-01580-F, Dep't of Energy (Nat'l Headquarters) (Aug. 14, 2014); FOIA Request LR-20140441, Nat'l Labor Relations Bd. (June 4, 2014); FOIA Request 14-01095, Sec. & Exch. Comm'n (May 7, 2014); FOIA Request 2014-4QFO-00236, Dep't of Homeland Sec. (Jan. 8, 2014); FOIA Request DOC-OS-2014-000304, Dep't of Commerce (Dec. 30, 2013); FOIA Request 14F-036, Health Res. & Serv. Admin. (Dec. 6, 2013); FOIA Request 2013-073, Dep't of Homeland Sec. (Apr. 5, 2013); FOIA Request 2012-RMA-02563F, Dep't of Agric. (May 3, 2012); FOIA Request 2012-00270, Dep't of Interior (Feb. 17, 2012); FOIA Request 12-00455-F, Dep't of Educ. (Jan. 20, 2012).

[13] *See* 26 C.F.R. § 601.702(e)(14) ; 36 C.F.R. § 1230.3(b) ("Unlawful or accidental destruction (also called unauthorized destruction) means . . . disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records."); *Chambers v. Dep't of the Interior*, 568 F.3d 998, 1004–05 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under the FOIA or the Privacy Act."); *Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41–44 (D.D.C. 1998).

CERTIFIED MAIL

9415 5118 9956 3210 3906 16

stamps.com

$8.50
US POSTAGE
FIRST-CLASS
FROM 20006
JUN 22 2016
stamps.com

Ms Rhonda O'Reilly
IRS FOIA Request
HQ FOIA
Stop 211
P.O. Box 621506
Atlanta GA 30362-3006

CAUSE of ACTION INSTITUTE
Advocates for Government Accountability
A 501(c)(3) Nonprofit Corporation
1875 Eye Street, NW, Suite 800, Washington, DC 20006

EXHIBIT B
FOIA Request #2

INTERNAL REVENUE SERVICE
Data Service
JUN 28 2016
Centralized Processing Unit
Atlanta, GA

June 22, 2016

**VIA CERTIFIED MAIL & EMAIL**

Ms. Rhonda O'Reilly
IRS FOIA Request
HQ FOIA
Stop 211
P.O. Box 621506
Atlanta, GA 30362-3006

Ed Killen, Director
Privacy, Governmental Liaison and Disclosure ("PGLD")
ATTN: PGLD Office of Disclosure FOIA & Program Operations
Internal Revenue Service, OS:P
401 W. Peachtree Street
Atlanta GA 30308-3510
E-mail: edward.t.killen@irs.gov

**Re: Freedom of Information Act Request**

Dear Ms. O'Reilly and Mr. Killen:

I write on behalf of Cause of Action Institute ("CoA Institute"), a nonprofit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair.[1] In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability. To that end, we are examining IRS treatment of records relating to the Joint Committee on Taxation ("JCT") and IRS operations vis-à-vis inquiries from, and responses or reports to, the JCT.[2]

[1] *See* CAUSE OF ACTION INST., *About*, www.causeofaction.org/about (last visited June 21, 2016).
[2] *See generally* Dep't of the Treasury, Internal Revenue Serv., Chief Counsel Notice CC-2016-003: FOIA Requests for Joint Committee on Taxation Information (Dec. 18, 2015), *available at* http://1.usa.gov/28LAUyF.

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, CoA Institute hereby requests access to the following records for the time period of January 21, 2009 to the present:[3]

1. All records transmitted between the IRS and the JCT, and all communications concerning such transmissions, which do not contain a legend restricting their use or dissemination.

2. All communications between IRS Privacy, Governmental Liaison, and Disclosure ("PGLD") personnel, as well as other affected IRS functions or components, and the JCT concerning any determination to disclose or withhold IRS records that were the subject of a JCT oversight inquiry.

3. All records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT in response to a general oversight inquiry.

4. All records generated or maintained by the IRS in the normal course of its operations that were subsequently provided to the JCT as part of IRS general oversight responsibilities, but which were not provided in response to a JCT inquiry.[4]

5. All records created by or originating at the JCT but which were provided to the IRS and are maintained by the IRS in any agency records system, including but not limited to the E-trak Communications and Correspondence tracking system.

Please exclude from the scope of the above requests any records concerning 26 U.S.C. §§ 6045, 6405, and 8022(2).

**<u>Request for a Public Interest Fee Waiver</u>**

CoA Institute requests a waiver of any and all applicable fees. The FOIA and applicable IRS regulations provide that the IRS shall furnish requested records without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[5]

In this case, the requested records would unquestionably shed light on the "operations or activities of the government" by revealing how the IRS treats JCT records—or IRS records provided to the JCT—under FOIA. These sorts of records have not been widely distributed, and their disclosure and dissemination would contribute to public understanding about IRS FOIA operations and the impact of recent Chief Counsel guidance on the treatment of JCT-related records.[6] Indeed, there is significant public interest in understanding why the Chief Counsel issued this guidance without notice-and-comment rulemaking so as to designate certain agency records as "congressional records." Further, there is public interest in learning more about the JCT and its role with regard to the IRS. This is particularly true when the IRS exercises its discretion to remove records from

---

[3] For the purposes of this request, the term "present" should be construed as the date on which the agency begins its search for responsive records. *See Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).
[4] For example, responsive records would include IRS reports under 26 U.S.C. §§ 6103(p)(3)(B) or 6103(p)(3)(C).
[5] 5 U.S.C. § 552(a)(4)(A)(iii); 26 C.F.R. § 601.702(f)(2); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115–19 (D.C. Cir. 2015) (discussing proper application of public-interest fee waiver test).
[6] *See supra* note 2.

public access absent the JCT's clear instruction that such records are to be treated outside the scope of the FOIA. Finally, as a threshold matter, there is public interest in understanding whether the JCT has constitutional authority to direct the IRS to treat certain agency records as "legislative records" for the purposes of FOIA administration.

CoA Institute has both the intent and ability to make the results of this request available to a reasonably broad public audience through various media. Its staff has significant experience and expertise in government oversight, investigative reporting, and federal public interest litigation. These professionals will analyze the information responsive to this request, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, whether through the Institute's regularly published online newsletter, memoranda, reports, or press releases.[7] In addition, as CoA Institute is a non-profit organization, as defined under Section 501(c)(3) of the Internal Revenue Code, it has no commercial interest in making this request.

**Request To Be Classified as a Representative of the News Media**

For fee status purposes, CoA Institute also qualifies as a "representative of the news media" under FOIA.[8] As the D.C. Circuit recently held, the "representative of the news media" test is properly focused on the requestor, not the specific FOIA request at issue.[9] CoA Institute satisfies this test because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.[10] Although it is not required by the statute, CoA Institute gathers the news it regularly publishes from a variety of sources, including FOIA requests, whistleblowers/insiders, and scholarly works. It does not merely make raw information available to the public, but rather distributes distinct work products, including articles, blog posts, investigative reports, newsletters, and congressional testimony and statements for the record.[11] These distinct works are distributed to the public through various media, including the Institute's website, Twitter, and Facebook. CoA Institute also provides news updates to subscribers via e-mail.

The statutory definition of a "representative of the news media" contemplates that organizations such as CoA Institute, which electronically disseminate information and publications via "alternative media[,] shall be considered to be news-media entities."[12] In light of the foregoing,

[7] *See Cause of Action*, 799 F.3d at 1125–26 (holding that public interest advocacy organizations may partner with others to disseminate their work).
[8] 5 U.S.C. § 552(a)(4)(A)(ii)(II); 26 C.F.R. § 601.702(f)(3)(ii)(B).
[9] *See Cause of Action*, 799 F.3d at 1121.
[10] The IRS definition of "representative of the news media," 26 C.F.R. § 601.702(f)(3)(ii)(B), is in conflict with the statutory definition and controlling case law. The agency has improperly retained the outdated "organized and operated" standard that Congress abrogated when it provided a statutory definition in the OPEN Government Act of 2007. *See Cause of Action*, 799 F.3d at 1125 ("Congress . . . omitted the 'organized and operated' language when it enacted the statutory definition in 2007. . . . [Therefore,] there is no basis for adding an 'organized and operated' requirement to the statutory definition."). Under either definition, however, CoA Institute qualifies as a representative of the news media.
[11] *See, e.g., Cause of Action Testifies Before Congress on Questionable White House Detail Program*, CAUSE OF ACTION (May 19, 2015), *available at* http://goo.gl/Byditl; CAUSE OF ACTION, 2015 GRADING THE GOVERNMENT REPORT CARD (Mar. 16, 2015), *available at* http://goo.gl/MqObwV; *Cause of Action Launches Online Resource: ExecutiveBranchEarmarks.com*, CAUSE OF ACTION (Sept. 8, 2014), *available at* http://goo.gl/935qAi; CAUSE OF ACTION, GRADING THE GOVERNMENT: HOW THE WHITE HOUSE TARGETS DOCUMENT REQUESTERS (Mar. 18, 2014), *available at* http://goo.gl/BiaEaH; CAUSE OF ACTION, GREENTECH AUTOMOTIVE: A VENTURE CAPITALIZED BY CRONYISM (Sept. 23, 2013), *available at* http://goo.gl/N0xSvs; CAUSE OF ACTION, POLITICAL PROFITEERING: HOW FOREST CITY ENTERPRISES MAKES PRIVATE PROFITS AT THE EXPENSE OF AMERICAN TAXPAYERS PART I (Aug. 2, 2013), *available at* http://goo.gl/GpP1wR.
[12] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

numerous federal agencies have appropriately recognized the Institute's news media status in connection with its FOIA requests.[13]

**Record Preservation Requirement**

CoA Institute requests that the disclosure officer responsible for the processing of this request issue an immediate hold on all records responsive, or potentially responsive, to this request, so as to prevent their disposal until such time as a final determination has been issued on the request and any administrative remedies for appeal have been exhausted. It is unlawful for an agency to destroy or dispose of any record subject to a FOIA request.[14]

**Record Production and Contact Information**

In an effort to facilitate document review, please provide the responsive documents in electronic form in lieu of a paper production. If a certain portion of responsive records can be produced more readily, CoA Institute requests that those records be produced first and the remaining records be produced on a rolling basis as circumstances permit.

If you have any questions about this request, please contact me by telephone at (202) 499-4232 or by e-mail at ryan.mulvey@causeofaction.org. Thank you for your attention to this matter.

Ryan P. Mulvey

RYAN P. MULVEY
COUNSEL

---

[13] *See, e.g.*, FOIA Request CFPB-2016-222-F, Consumer Fin. Prot. Bureau (Apr. 20, 2016); FOIA Request CFPB-2016-207-F, Consumer Fin. Prot. Bureau (Apr. 14, 2016); FOIA Request 796939, Dep't of Labor (Mar.. 7, 2016); FOIA Request 2015-HQFO-00691, Dep't of Homeland Sec. (Sept. 22, 2015); FOIA Request F-2015-12930, Dept. of State (Sept. 2, 2015); FOIA Request 14-401-F, Dep't of Educ. (Aug. 13, 2015); FOIA Request HQ-2015-01689-F, Dep't of Energy (Aug. 7, 2015); FOIA Request 2015-OSEC-04996-F, Dep't of Agric. (Aug. 6, 2015); FOIA Request OS-2015-00419, Dep't of Interior (Aug. 3, 2015); FOIA Request 780831, Dep't of Labor (Jul 23, 2015); FOIA Request 15-05002, Sec. & Exch. Comm'n (July 23, 2015); FOIA Request 145-FOI-13785, Dep't of Justice (Jun. 16, 2015); FOIA Request 15-00326-F, Dep't of Educ. (Apr. 08, 2015); FOIA Request 2015-26, Fed. Energy Regulatory Comm'n (Feb. 13, 2015); FOIA Request HQ-2015-00248, Dep't of Energy (Nat'l Headquarters) (Dec. 15, 2014); FOIA Request F-2015-106, Fed. Commc'n Comm'n (Dec. 12, 2014); FOIA Request HQ-2015-00245-F, Dep't of Energy (Dec. 4, 2014); FOIA Request F-2014-21360, Dep't of State, (Dec. 3, 2014); FOIA Request LR-2015-0115, Nat'l Labor Relations Bd. (Dec. 1, 2014); FOIA Request 201500009F, Exp.-Imp. Bank (Nov. 21, 2014); FOIA Request 2015-OSEC-00771-F, Dep't of Agric. (OCIO) (Nov. 21, 2014); FOIA Request OS-2015-00068, Dep't of Interior (Office of Sec'y) (Nov. 20, 2014); FOIA Request CFPB-2015-049-F, Consumer Fin. Prot. Bureau (Nov. 19, 2014); FOIA Request GO-14-307, Dep't of Energy (Nat'l Renewable Energy Lab.) (Aug. 28, 2014); FOIA Request HQ-2014-01580-F, Dep't of Energy (Nat'l Headquarters) (Aug. 14, 2014); FOIA Request LR-20140441, Nat'l Labor Relations Bd. (June 4, 2014); FOIA Request 14-01095, Sec. & Exch. Comm'n (May 7, 2014); FOIA Request 2014-4QFO-00236, Dep't of Homeland Sec. (Jan. 8, 2014); FOIA Request DOC-OS-2014-000304, Dep't of Commerce (Dec. 30, 2013); FOIA Request 14F-036, Health Res. & Serv. Admin. (Dec. 6, 2013); FOIA Request 2013-073, Dep't of Homeland Sec. (Apr. 5, 2013); FOIA Request 2012-RMA-02563F, Dep't of Agric. (May 3, 2012); FOIA Request 2012-00270, Dep't of Interior (Feb. 17, 2012); FOIA Request 12-00455-F, Dep't of Educ. (Jan. 20, 2012).

[14] *See* 26 C.F.R. § 601.702(e)(14) ; 36 C.F.R. § 1230.3(b) ("Unlawful or accidental destruction (also called unauthorized destruction) means . . . disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records."); *Chambers v. Dep't of the Interior*, 568 F.3d 998, 1004–05 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under the FOIA or the Privacy Act."); *Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41–44 (D.D.C. 1998).

Sender:

CERTIFIED MAIL

9410 8118 9956 3210

$8.50
US POSTAGE
FIRST-CLASS
FROM 20006
JUN 22 2016
stamps.com

Ms Rhonda O'Reilly
IRS FOIA Request
HQ FOIA
Stop 211
P.O. Box 621506
Atlanta GA 30362-3006