IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No. 1:16-cv-2354 |

**SECOND DECLARATION OF SCOTT S. LANDES**

I, SCOTT S. LANDES, pursuant to the provisions of 28 U.S.C. § 1746(2) declare and say:

1. I am a Supervisory Management and Program Analyst in the Internal Revenue Service's ("IRS") Office of Legislative Affairs. I have held this position since 2006. I have also served as Acting Director of the Office of Legislative Affairs for the time period from October 2013 until January 2014. As part of my official duties as Supervisory Management and Program Analyst, I have the primary responsibility for managing ongoing relationships with Members of Congress (and their staff) and with Congressional Committee Members (and Committee staff), especially with those Members and staff who serve on, or work for, congressional tax-writing committees, including the Joint Committee on Taxation ("JCT").

**The Office of Legislative Affairs**

2. All communications by and between Congress and the IRS are subject to restrictions implemented by Congress, the Office of Management and Budget ("OMB"), the Department of the Treasury, and the IRS itself. For example, Congress has prohibited any

lobbying of Congress by federal agencies, using appropriated funds, with respect to legislation or policy proposals. *See* 18 U.S.C. § 1913. OMB's rules require that all official agency comments on pending legislation be cleared through its office. OMB Circular A-19. The Department of the Treasury has prohibited IRS personnel from providing legislative proposals or comments on pending legislation to a Congressional Member or staffer without first clearing it with IRS Legislative Affairs. Treasury Directive 28-02. Similarly, under the IRS's rules, comments on legislation may only be made with the approval of the Commissioner of Internal Revenue or the Commissioner's designee. And comments on legislation are limited in scope to the administrative aspects of the legislation. IRS Policy Statement 11-87 at IRM § 1.2.19.1. Specifically, IRS personnel may furnish technical assistance in preparing draft tax legislation and related documents to Congressional committees and committee staff only when authorized by the Commissioner. IRS personnel are not authorized to furnish assistance, including technical comments, in drafting legislation to individual Members except in limited circumstances after obtaining the Commissioner's authorization. IRS Policy Statement 11-89 at IRM § 1.2.19.1.4.

3. In order to ensure that the IRS complies with these various rules, and to ensure consistency and fairness in the IRS's relationship with Congress, the IRS created the Office of Legislative Affairs to be the central coordinating point for IRS-Congress relations. The Office of Legislative Affairs is specifically tasked with handling, among other inquiries, communications from the Joint Committee on Taxation.

**Processing of JCT Requests**

4. The JCT is a joint committee of Congress, the authority of which is established by statute. 26 U.S.C. § 8001, et seq. Among its various functions, the JCT monitors the actions and positions taken by the Internal Revenue Service ("IRS") to ensure that the tax system is being

administered in a fair, appropriate, and efficient manner that achieves the legislative intent of the Congress. Pursuant to that oversight function, JCT has constitutional and statutory authority to obtain certain information and documents from the IRS. Congress has "authorized and directed" the IRS to provide information in response to such requests.

5. The IRS receives requests for information from the JCT in several ways: through letters from the JCT's Chief of Staff to the Commissioner of the IRS; through emails and telephone calls from the JCT's professional staff to my office; and, in rare occasions, directly to subject matter experts at the IRS. When the JCT's Chief of Staff sends a letter to the Commissioner of the IRS requesting that it provide information, it is directed to my office. Similarly, if any IRS employee receives an email request for information, it is the IRS's practice that such communication also be forwarded to me and my staff and processed in a manner consistent with the procedures described in paragraphs 6 and 7, *infra.*

6. Once a written request is received by my office, I and my staff review the request to determine which division(s)/function(s) within the IRS can compile the requested information. Each division/function within the IRS has designated liaisons tasked with assisting my office in preparing responses to congressional inquiries. These individuals are typically management-level employees of the IRS who work in the office of the Commissioner of their operating division and have the experience necessary to identify and work with subject matter experts within their division to compile the requested data and/or undertake the task of assembling information for a draft response. The requested data compilations or draft responses go through a review and approval process within the operating division's chain of command. Once the appropriate high level official, usually the Commissioner of the operating division, has approved

the draft compilation or response, it is frequently provided to personnel in the Office of the Deputy Commissioners for their review before it is, in turn, provided to Legislative Affairs.

7. When my office receives an operating division's draft compilation or response after it has been cleared through the Office of the Commissioner, my staff and I review the data and determine whether it does, in fact, provide information responsive to the JCT inquiry. To the extent any extraneous information is included in what my office receives from the operating division, such information will be removed from the response to JCT. If the response is formal, a written response letter will be prepared for signature by the Director, Legislative Affairs or the Commissioner, depending upon the sensitivity of the subject matter. If the response is informal, I and my staff will create an email response to JCT.

8. It is the IRS's practice and policy that all of JCT's written requests for information to the IRS regarding matters of official JCT business, including those submitted by email, are segregated, tracked, and preserved by myoffice in the E-TRAK Communications and Correspondence System. E-TRAK is a database designed to track and catalogue all incoming correspondence from Congress, the Department ofTreasury, the White House, the Government Accountability Office, and the Office of Treasury Inspector General for Tax Administration.

9. In addition to formally cataloguing all external requests, I and my staff maintain all email communications between the JCT and the IRS in separate electronic folders on our desktop computers. We also maintain separate folders for the data compiled by the IRS's operating divisions for the JCT's inquiries. By tracking such communications in E-TRAK and in separate electronic folders on our desktop computers, my office has the ability to timely and effectively manage responses to inquiries and issues raised by the JCT.

10. In rare instances, professional staff from the JCT may request data from the IRS orally – *i.e.*, by telephone. In my experience, any such oral request, particularly if it requires the IRS to compile data or prepare a written response to the JCT, is typically later memorialized in writing in an email from JCT, processed and tracked as set forth in paragraphs 5 through 9 *supra*. Additionally, any data compiled in response to the request is segregated by my office.

**Confidentiality of JCT's Requests**

11. It is my understanding that it is the IRS's longstanding policy and practice that all communications from JCT to any executive agency regarding matters of official JCT business, along with all records compiled or prepared by those agencies in response to those communications, are deemed to be congressional records subject to congressional control, even when in the physical possession of an agency. The JCT's intention is reflected and communicated to the IRS in several ways.

12. First, in letters from the JCT Chief of Staff to the Commissioner of Internal Revenue, and in emails from JCT Staff to my office, it is JCT's policy and practice to include a legend that makes clear that it considers its requests, and the IRS's responses, to be congressional records.

13. For the entire time period of plaintiff's request which is the basis for the instant litigation in which this Declaration is being filed, *i.e.*, January 2009, through December 1, 2016, the legend included on JCT's letters and emails has stated:

> This document is a record of the Joint Committee on Taxation ('Joint Committee') and is entrusted to the [Department of the Treasury/IRS] for your use only in handling this matter. Additionally, any documents created by the [Department of the Treasury/IRS] in connection with a response to this Joint Committee document, including (but not limited to) any replies from the Joint Committee, are records of the Joint Committee and shall be segregated from agency records and remain subject to the control of the Joint Committee. Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom

> of Information Act. Absent explicit Joint Committee authorization, access to this document and any responsive documents shall be limited to [Treasury/IRS] personnel who need such access for the purposes of providing information or assistance to the Joint Committee.

This legend is typically included as the final paragraph in a letter, and at the bottom of any email.

14. Second, in recognition of JCT's stated intent that all of its communications from JCT to the IRS regarding matters of official JCT business and any responses thereto remains a congressional record, the IRS has included the following provision in the Internal Revenue Manual:

> Whenever the Joint Committee's inquiry letter includes a legend, that letter remains a congressional record. In addition, any records created by the IRS in connection with the agency's response to the Joint Committee's inquiry, including (but not limited to) the IRS reply letter, and any records created by the IRS as a result of, or in response to, that inquiry, will also be treated as congressional records. Accordingly, the inquiry letter from the Joint Committee, and any records created by the IRS as a result of, or in response to, that inquiry, are not agency records responsive to a FOIA request and must not be released under the FOIA.

I.R.M. § 11.3.13.5.3(4) (Oct. 26, 2007).[1] Additionally, the I.R.M. provides that "[d]epending upon the wording of the FOIA request, copies of records created and maintained by the IRS in the normal course of its operations that are subsequently provided to the Joint Committee in response to a general inquiry may be . . . considered congressional records." I.R.M. § 11.3.13.5.3(6) (Oct. 26, 2007). For example, "[i]f the FOIA request specifically asks for records reviewed by the Joint Committee, the disclosure of any records, or even the acknowledgement that these records exist in the context of a Joint Committee inquiry, may confirm that the Joint Committee had exercised its general oversight responsibilities." *Id.* § 11.3.13.5.3(6)(a). It is my understanding that the 2007 version of I.R.M. § 11.2.13.5.3 was modified after the D.C. Circuit

[1] The current version of this provision is located at I.R.M § 11.3.13.3.5(3) (April 19, 2017).

Court's decision in the case *United We Stand America v. IRS*, 359F.3d 595 (D.C. Cir. 2004), to unambiguously reflect the intention of the JCT that both the incoming JCT inquiry and all documents created in response to the inquiry were congressional records.

15. The JCT has communicated to my office, and it has long been the understanding of the employees of my office, that the absence of the legend in JCT's communications to the IRS regarding matters of JCT's official business is not determinative of whether the inquiry and any response is a congressional record. Accordingly, it is the practice of my office that, when a request is made verbally by telephone or in person, any records or data prepared in response to the request is still to be treated as a confidential congressional record. That understanding has since been codified in the IRS's Chief Counsel Directives Manual ("C.C.D.M."), which notes that "the absence of the legend is not legally determinative" and that "[i]f a JCT document failsto contain a legend, generally, IRS practice is to treat the JCT document and any IRS responses thereto as a congressional record." C.C.D.M. 35.5.4.9(7).

16. The policy that all of JCT's communications with the IRS regarding matters of official JCT business, and responses thereto, are congressional records that are in Congress's exclusive control is communicated to professional staff within the IRS not only through the I.R.M. and the C.C.D.M., but also as part of the agency's regulations. Specifically, employees are instructed that requests from any congressional office, including the JCT, are to be forwarded to the Office of Legislative Affairs for processing. *See* 26 C.F.R. § 301.9000-4(e) ("An IRS officer, employee or contractor who receives a request or demand in an IRS congressional matter shall notify promptly the IRS Office of Legislative Affairs. The IRS officer, employee or contractor who received the request or demand shall await instructions from the authorizing official."). IRS employees who work as primary points of contact between the IRS and local

Congressional offices are required to call on Legislative Affairs for general or specific advice on all matters relating to Congress. These employees report issues directly to Legislative Affairs and that office provides them with expertise in the areas that may be raised by local Congressional offices. In keeping with the rules and procedures noted in ¶ 2 of this Declaration, IRS personnel working with local Congressional offices are specifically counseled not to discuss specific tax or other legislation or the IRS budget/appropriations process with the Congressional offices as such discussions require the direct involvement of Legislative Affairs. *See* I.R.M. 11.5.2.1, *et seq.*

**Types of Responsive Records Identified**

17. The Service identified responsive records in the following locations: (1) the E-TRAK Communications and Correspondence System; and (2) the email and electronic folders of Scott Landes.

*E-TRAK Records*

18. Based on the search of E-TRAK, the Service identified 378 pages of records that are responsive to the records request:

a. There are 29 topics that are responsive to the records request, consisting of 310 pages of records, in which a legend is included in the original formal correspondence from JCT. In all instances, there is formal letter from JCT to IRS that includes a legend, and usually a formal response from IRS back to JCT that does not include a legend on it. Many topics include a fax cover page or email cover page from JCT and/or IRS about the formal letters that usually, but not always, includes an additional legend. In some instances, there are informal emails between JCT and IRS about the subject of the formal JCT letter that sometimes, but not always, include an additional legend. Finally, in some instances, there are internal emails and attachments to emails between IRS employees

about the formal JCT request. These internal communications do not have a legend on them. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

b. There are six topics in E-TRAK, consisting of 20 pages of records, in which there is no legend on the original formal correspondence from JCT. In five instances, there is a formal letter from JCT to IRS that does not include a legend, and in five of the instances, there is a formal response from IRS to JCT that does not have a legend on it. In one instance, there is an internal IRS email chain related to the topic; for this topic, the JCT identified that it accidentally omitted the legend on its formal letter, and re-sent the formal letter to IRS with a legend. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

c. There is one topic in E-TRAK, consisting of 17 pages of records, in which there is a formal response letter from IRS to JCT, but the original correspondence from JCT to IRS is not saved in E-TRAK. The records in E-TRAK consist of the formal response letter from IRS to JCT, and PDFs of spreadsheets created by the IRS in response to the JCT request. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

d. There are two communications in which IRS sent formal reports to JCT pursuant to its statutory reporting obligations, along with a cover letter and an additional 2-page attachment. These communications consist of 31 pages of records. None of the records include a legend. There are no responses from JCT or emails related to these communications. These communications are responsive to Items 1 and 4 of the First

Request. For the reasons stated in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

*Email and Electronic Folders of Scott Landes*

19. Based on the search of my email and electronic folders, there are 94 topics that are responsive to the records request, consisting of 1,191 pages of records, plus an additional 12 emails. The records can be further delineated as follows:

<u>Internal IRS Communications</u>

a. There are 35 topics, consisting of 525 pages of emails and attachments of emails, that are internal communications between IRS employees. All 525 pages consist of communications concerning a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. All of these emails were segregated from Scott Landes' regular email and preserved in separate electronic folders reserved for JCT communications. These emails and attachments are responsive to FOIA Request No. 1, Item 1 as "communications concerning" "records transmitted between the IRS and the JCT" "which do not contain a legend restricting their use or dissemination." Many of these PDFs consist of repeat email chains. None of the 525 pages of emails and attachments contain a restrictive legend on the email itself.

i. For 25 of the topics (451 pages of emails and attachments), the Service identified a legend on either the original JCT request in E-TRAK or on emails between the IRS and JCT about the JCT request. The legend restricts the use and dissemination of these 451 pages of internal IRS emails and attachments. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

ii. For 10 of the topics (74 pages of emails and attachments), the Service was unable to identify a legend restricting the use or dissemination of the internal IRS records. The subjects of the 10 topics (74 pages of emails and attachments) all relate to specific JCT oversight inquiries. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

External Communications between IRS and JCT

b. There are 666 pages of emails and attachments that are communications between the IRS and JCT. Many of these emails did not originate with an email from JCT directly to Scott Landes, but instead were emails from JCT to other individuals within the Office of Legal Affairs, or originated as emails from JCT to management-level IRS liaisons within specific IRS divisions. If the originating email in an email chain did not include Scott Landes, Mr. Landes was included in the emails at a later time, or the email was forwarded directly to Mr. Landes. Whether Mr. Landes received these emails from the outset, or whether he was included in the email discussion at a later time, all of these emails were segregated from Scott Landes' regular email and preserved in separate electronic folders reserved for JCT communications. Of these records, 59 topics (631 pages) consist of communications concerning a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. The remaining 35 pages contain either administrative emails or personal emails that do not appear to concern a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. All of these emails and attachments are responsive to FOIA Request No. 1, Item 1 as "communications concerning" "records

transmitted between the IRS and the JCT" "which do not contain a legend restricting their use or dissemination." Many of these PDFs consist of repeat email chains. None of the 666 pages of emails and attachments contain a restrictive legend on the email itself.

i. For 25 topics (393 pages of emails and attachments), the Service identified a legend on either the original JCT request in E-TRAK or in other related emails between the IRS and JCT about the JCT request. The legend restricts the use and dissemination of these internal IRS emails and attachments. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

ii. For the other 34 topics (238 pages of emails and attachments), the Service was unable to identify a legend that restricted the use or dissemination of the internal IRS records. The subjects of the 34 topics (238 pages) all concern specific JCT oversight inquiries. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA.

iii. There are 28 pages of communications that consist of administrative emails between IRS and JCT, that do not appear to concern a JCT general oversight inquiry. These emails communicate topics such as employees' schedules and availability for calls/meetings, access to a government building, changes in personnel, and explanations of administrative rules. While these records may not disclose the substantive content of a specific JCT oversight inquiry, the records communicate information that was needed by IRS or JCT employees to accomplish their official responsibilities. For these reasons and for

the reasons described in the paragraphs above, the Service asserts that these records are congressional records not subject to the FOIA.

iv. There are 7 pages of communications that consist of personal emails between the IRS and JCT, that do not appear to concern a JCT general oversight inquiry or administrative matters. These emails communicate information such as personal congratulations, comments about national sporting events, and news reports unrelated to the IRS or JCT. The Service asserts that these 7 pages of records are congressional records not subject to the FOIA, or in the alternative, that they are personal records not subject to the FOIA. For purposes of determining whether the records are personal records not subject to the FOIA, the following facts are relevant: (1) the records are email exchanges between employees of the IRS and the JCT using their official IRS and JCT email addresses; (2) the records are stored in the electronic folders of Scott Landes on his IRS-issued computer; (3) the email records were not used to conduct any IRS or JCT business, nor used forany other IRS or JCT purpose.

<u>Final 12 Emails</u>

c. There are 12 emails *from* JCT *to* IRS in response to privileged inquiries from the IRS that are responsive to Item 2 of the First Request (communications between the IRS and JCT concerning any determination whether to disclose or withhold IRS records that were the subject of a JCT oversight inquiry). The records pertain to either: (1) the pre-lawsuit processing of Cause of Action's FOIA requests that are the subject of this lawsuit, or to (2) the Service's proposed revisions to the Chief Counsel Directives Manual and Internal Revenue Manual. For the reasons described in the paragraphs above,

the Service asserts that these 12 emails are congressional records not subject to the FOIA. I understand that another employee of the Service will submit a declaration in support of the Service's FOIA Exemptions with respect to the related emails *from* IRS *to* JCT.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of August, 2021 in Washington, DC.

*/s/ Scott S. Landes*______________________
SCOTT S. LANDES
Supervisory Program and Management Analyst
IRS Office of Legislative Affairs