IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) | |
| | ) | Case No. 1:16-cv-2354 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTERNAL REVENUE SERVICE'S SEPARATE STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h), and paragraph 7(j)(i) of the Court's Standing Order in Civil Cases, the Internal Revenue Service ("IRS)" submits this separate statement of all material facts as to which the IRS contends are not in dispute:

| **The Office of Legislative Affairs** | |
|---|---|
| 1. All communications by and between Congress and the IRS are subject to restrictions implemented by Congress, the Office of Management and Budget ("OMB"), the Department of the Treasury, and the IRS itself. For example, Congress has prohibited any lobbying of Congress by federal agencies, using appropriated funds, with respect to legislation or policy proposals. *See* 18 U.S.C. | |

| | |
|---|---|
| § 1913. Second Declaration of Scott S. Landes ("Second Landes Dec.") ¶ 2.[1] | |
| 2. OMB's rules require that all official agency comments on pending legislation be cleared through its office. OMB Circular A-19. Id. | |
| 3. The Department of the Treasury has prohibited IRS personnel from providing legislative proposals or comments on pending legislation to a Congressional Member or staffer without first clearing it with IRS Legislative Affairs. Treasury Directive 28-02. Id. | |
| 4. Under the IRS's rules, comments on legislation may only be made with the approval of the Commissioner of Internal Revenue or the Commissioner's designee. IRS Policy Statement 11-87 at IRM § 1.2.19.1. Second Landes Dec. ¶ 2. | |
| 5. And comments on legislation are limited in scope to the administrative aspects | |

[1] Scott Landes previously filed a declaration in support of the IRS's motion to dismiss. (Dkt. No. 11). All references to his declaration are to his second declaration, filed concurrently with the IRS's motion for summary judgment.

| | |
|---|---|
| of the legislation. IRS Policy Statement 11-87 at IRM § 1.2.19.1. Second Landes Dec. ¶ 2. | |
| 6. Specifically, IRS personnel may furnish technical assistance in preparing draft tax legislation and related documents to Congressional committees and committee staff only when authorized by the Commissioner. *Id.* | |
| 7. IRS personnel are not authorized to furnish assistance, including technical comments, in drafting legislation to individual Members except in limited circumstances after obtaining the Commissioner's authorization. IRS Policy Statement 11-89 at IRM § 1.2.19.1.4. *Id.* | |
| 8. In order to ensure that the IRS complies with these various rules, and to ensure consistency and fairness in the IRS's relationship with Congress, the IRS created the Office of Legislative Affairs to be the central coordinating point for IRS-Congress relations. Second Landes Dec. ¶ 3. | |

| | |
|---|---|
| 9. The Office of Legislative Affairs is specifically tasked with handling, among other inquiries, communications from the Joint Committee on Taxation. Second Landes Dec. ¶ 3. | |
| **Processing of JCT Requests** | |
| 10. The JCT is a joint committee of Congress, the authority of which is established by statute. 26 U.S.C. § 8001, et seq. *Id.* ¶ 4. | |
| 11. Among its various functions, the JCT monitors the actions and positions taken by the Internal Revenue Service ("IRS") to ensure that the tax system is being administered in a fair, appropriate, and efficient manner that achieves the legislative intent of the Congress. Second Landes Dec. ¶ 4. | |
| 12. Pursuant to that oversight function, JCT has constitutional and statutory authority to obtain certain information and documents from the IRS. Congress has "authorized and directed" the IRS to provide information in | |

| | |
|---|---|
| response to such requests. Second Landes Dec. ¶ 4. | |
| 13. The IRS receives requests for information from the JCT in several ways: through letters from the JCT's Chief of Staff to the Commissioner of the IRS; through emails and telephone calls from the JCT's professional staff to the Office of Legislative Affairs; and, in rare occasions, directly to subject matter experts at the IRS. Second Landes Dec. ¶ 5. | |
| 14. When the JCT's Chief of Staff sends a letter to the Commissioner of the IRS requesting that it provide information, it is directed to the Office of Legislative Affairs. Second Landes Dec. ¶ 5. | |
| 15. Similarly, if any IRS employee receives an email request for information, it is the IRS's practice that such communication also be forwarded to Scott Landes and his staff in the Office of Legislative Affairs. Second Landes Dec. ¶ 5. | |

| | |
|---|---|
| 16. Once a written request is received by the Office of Legislative Affairs, Scott Landes and his staff review the request to determine which division(s)/function(s) within the IRS can compile the requested information. Second Landes Dec. ¶ 6. | |
| 17. Each division/function within the IRS has designated liaisons tasked with assisting the Office of Legislative Affairs in preparing responses to congressional inquiries. Second Landes Dec. ¶ 6. | |
| 18. These individuals are typically management-level employees of the IRS who work in the office of the Commissioner of their operating division and have the experience necessary to identify and work with subject matter experts within their division to compile the requested data and/or undertake the task of assembling information for a draft response. Second Landes Dec. ¶ 6 | |
| 19. The requested data compilations or draft responses go through a review and approval process within the operating | |

| | |
|---|---|
| division's chain of command. Second Landes Dec. ¶ 6 | |
| 20. Once the appropriate high level official, usually the Commissioner of the operating division, has approved the draft compilation or response, it is frequently provided to personnel in the Office of the Deputy Commissioners for their review before it is, in turn, provided to Legislative Affairs. Second Landes Dec. ¶ 6. | |
| 21. When the Office of Legislative Affairs receives an operating division's draft compilation or response after it has been cleared through the Office of the Commissioner, Scott Landes and his staff review the data and determine whether it does, in fact, provide information responsive to the JCT inquiry. Second Landes Dec. ¶ 7. | |
| 22. To the extent any extraneous information is included in what the Office of Legislative Affairs receives from the operating division, such information will be removed | |

| | |
|---|---|
| from the response to JCT. Second Landes Dec. ¶ 7. | |
| 23. If the response is formal, a written response letter will be prepared for signature by the Director, Legislative Affairs or the Commissioner, depending upon the sensitivity of the subject matter. Second Landes Dec. ¶ 7. | |
| 24. If the response is informal, Scott Landes and his staff will create an email response to JCT. Second Landes Dec. ¶ 7. | |
| 25. It is the IRS's practice and policy that all of JCT's written requests for information to the IRS regarding matters of official JCT business, including those submitted by email, are segregated, tracked, and preserved by Landes' office in the E-TRAK Communications and Correspondence System. Second Landes Dec. ¶ 8. | |
| 26. E-TRAK is a database designed to track and catalogue all incoming correspondence from Congress, the Department of Treasury, the White House, the Government Accountability Office, and the | |

| | |
|---|---|
| Office of Treasury Inspector General for Tax Administration. Second Landes Dec. ¶ 8. | |
| 27. Each request from JCT is assigned a specific tracking number in E-TRAK, and related correspondence is tracked using that number. Third Landes Dec. ¶ 2. | |
| 28. In addition to formally cataloguing all external requests, Scott Landes and his staff maintain all email communications between the JCT and the IRS in separate electronic folders on their desktop computers. Second Landes Dec. ¶ 9; Third Landes Dec. ¶ 3. | |
| 29. Landes and his staff also maintain separate folders for the data compiled by the IRS's operating divisions for the JCT's inquiries. Second Landes Dec. ¶ 9. | |
| 30. By tracking such communications in E-TRAK and in separate electronic folders on Landes' office desktop computers, the Office of Legislative Affairs has the ability to timely and effectively manage responses to inquiries and issues raised by the JCT. Second Landes Dec. ¶ 9. | |

| | |
|---|---|
| 31. In rare instances, professional staff from the JCT may request data from the IRS orally – *i.e.*, by telephone. Second Landes Dec. ¶ 10. | |
| 32. Any JCT oral request, particularly if it requires the IRS to compile data or prepare a written response to the JCT, is typically later memorialized in writing in an email from JCT, processed and tracked. Additionally, any data compiled in response to the request is segregated by the Office of Legislative Affairs. Second Landes Dec. ¶ 10. | |
| **Confidentiality of JCT's Requests** | |
| 33. The IRS's longstanding policy and practice that all communications from JCT to any executive agency regarding matters of official JCT business, along with all records compiled or prepared by those agencies in response to those communications, are deemed to be congressional records subject to congressional control, even when in the physical possession of an agency. Id. ¶ 11. | |

| | |
|---|---|
| 34. In letters from the JCT Chief of Staff to the Commissioner of Internal Revenue, and in emails from JCT Staff to Landes' office, it is JCT's policy and practice to include a legend that makes clear that it considers JCT'srequests, and the IRS's responses, to be congressional records. Second Landes Dec. ¶ 12. | |
| 35. For the entire time period of plaintiff's request which is the basis for the instant litigation in which this Declaration is being filed, *i.e.*, January 2009 through December 1, 2016, the legend included on JCT's letters and emails has stated:<br><br>This document is a record of the Joint Committee on Taxation ('Joint Committee') and is entrusted to the [Department of the Treasury/IRS] for your use only in handling this matter. Additionally, any documents created by the [Department of the Treasury/IRS] in connection with a response to this Joint Committee document, including (but not limited to) any replies from the Joint Committee, are records of the Joint Committee and shall be segregated from agency records and remain subject to the control of the Joint Committee. Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom of Information Act. Absent explicit Joint Committee authorization, access to this document and any responsive documents shall | 36. |

| | |
|---|---|
| be limited to [Treasury/IRS] personnel who need such access for the purposes of providing information or assistance to the Joint Committee. Second Landes Dec. ¶ 13. | |
| 37. This legend is typically included as the final paragraph in a letter, and at the bottom of any email. Second Landes Dec. ¶ 13. | |
| 38. Second, in recognition of JCT's stated intent that all of its communications from JCT to the IRS regarding matters of official JCT business and any responses thereto remains a congressional record, the IRS included the following provision in the Internal Revenue Manual:<br><br>Whenever the Joint Committee's inquiry letter includes a legend, that letter remains a congressional record. In addition, any records created by the IRS in connection with the agency's response to the Joint Committee's inquiry, including (but not limited to) the IRS reply letter, and any records created by the IRS as a result of, or in response to, that inquiry, will also be treated as congressional records. Accordingly, the inquiry letter from the Joint Committee, and any records created by the IRS as a result of, or in response to, that inquiry, are not agency records responsive to a FOIA request and must not be released under the FOIA.<br>I.R.M. § 11.3.13.5.3(4) (Oct. 26, 2007).[2]<br><br>Second Landes Dec. ¶ 14. This provision was | |

[2] The current version of this provision is located at I.R.M § 11.3.13.5.4(4).

| | |
|---|---|
| included in the Manual at times relevant to the records requested by Cause of Action in this case. | |
| 39. Additionally, the I.R.M. provided that "[d]epending upon the wording of the FOIA request, copies of records created and maintained by the IRS in the normal course of its operations that are subsequently provided to the Joint Committee in response to a general inquiry may be . . . considered congressional records." I.R.M. § 11.3.13.5.3(6) (Oct. 26, 2007); Second Landes Dec. ¶ 14. This provision was included in the Manual at times relevant to the records requested by Cause of Action in this case. | |
| 40. For example, "[i]f the FOIA request specifically asks for records reviewed by the Joint Committee, the disclosure of any records, or even the acknowledgement that these records exist in the context of a Joint Committee inquiry, may confirm that the Joint Committee had exercised its general oversight responsibilities." *Id.* § 11.3.13.5.3(6)(a); | |

| | |
|---|---|
| Second Landes Dec. ¶ 14. This provision was included in the Manual at times relevant to the records requested by Cause of Action in this case. | |
| 41. The 2007 version of I.R.M. § 11.2.13.5.3 was modified after the D.C. Circuit Court's decision in the case *United We Stand America v. IRS*, 359 F.3d 595 (D.C. Cir. 2004), to unambiguously reflect the intention of the JCT that both the incoming JCT inquiry and all documents created in response to the inquiry were congressional records. Second Landes Dec. ¶ 14. | |
| 42. The JCT has communicated to the Office of Legislative Affairs, and it has long been the understanding of the employees of the Office of Legislative Affairs, that the absence of the legend in JCT's communications to the IRS regarding matters of JCT's official business is not determinative of whether the inquiry and any response is a congressional record. Second Landes Dec. ¶ 15. | |

| | |
|---|---|
| 43. It is the practice of the Office of Legislative Affairs that, when a request is made verbally by telephone or in person, any records or data prepared in response to the request is still to be treated as a confidential congressional record. Second Landes Dec. ¶ 15. | |
| 44. That understanding has since been codified in the IRS's Chief Counsel Directives Manual ("C.C.D.M."), which notes that "the absence of the legend is not legally determinative" and that "[i]f a JCT document fails to contain a legend, generally, IRS practice is to treat the JCT document and any IRS responses thereto as a congressional record." C.C.D.M. 35.5.4.9(7). Second Landes Dec. ¶ 15. | |
| 45. The policy that all of JCT's communications with the IRS regarding matters ofofficial JCT business, and responses thereto, are congressional records that are in Congress's exclusive control is communicated to professional staff within the IRS not only | |

| | |
|---|---|
| through the I.R.M. and the C.C.D.M., but also as part of the agency's regulations. Second Landes Dec. ¶ 16. | |
| 46. Employees are instructed that requests from any congressional office, including the JCT, are to be forwarded to the Office of Legislative Affairs for processing. *See* 26 C.F.R. § 301.9000-4(e) ("An IRS officer, employee or contractor who receives a request or demand in an IRS congressional matter shall notify promptly the IRS Office of Legislative Affairs. The IRS officer, employee or contractor who received the request or demand shall await instructions from the authorizing official."). Second Landes Dec. ¶ 16. | |
| 47. IRS employees who work as primary points of contact between the IRS and local Congressional offices are required to call on Legislative Affairs for general or specific advice on all matters relating to Congress. Second Landes Dec. ¶ 16. | |
| 48. These employees report issues directly to Legislative Affairs and that office provides | |

| | |
|---|---|
| them with expertise in the areas that may be raised by local Congressional offices. Second Landes Dec. ¶ 16. | |
| 49. IRS personnel working with local Congressional offices are specifically counseled not to discuss specific tax or other legislation or the IRS budget/appropriations process with the Congressional offices as such discussions require the direct involvement of Legislative Affairs. Second Landes Dec. ¶ 16; I.R.M. 11.5.2.1, *et seq*. | |
| **<u>Types of Responsive Records Identified</u>** | |
| 50. The Service identified responsive records in the following locations: (1) the E-TRAK Communications and Correspondence System; and (2) the email and electronic folders of Scott Landes. Second Landes Dec.¶ 17. | |
| **E-TRAK RECORDS** | |
| 51. Based on the search of E-TRAK, the Service identified 378 pages of records that are responsive to the records request. Second Landes Dec. ¶ 18. | |

| | |
|---|---|
| 52. There are 29 topics that are responsive to the records request, consisting of 310 pages of records, in which a legend is included in the original formal correspondence from JCT. Second Landes Dec. ¶ 18(a). | |
| 53. For all of these topics, there is formal letter from JCT to IRS that includes a legend, and usually a formal response from IRS back to JCT that does not include a legend on it. Many topics include a fax cover page or email cover page from JCT and/or IRS about the formal letters that usually, but not always, includes an additional legend. Second Landes Dec. ¶ 18. | |
| 54. In some instances, there are informal emails between JCT and IRS about the subject of the formal JCT letter that sometimes, but not always, include an additional legend. Second Landes Dec. ¶ 18. | |
| 55. Finally, in some instances, there are internal emails and attachments to emails between IRS employees about the formal JCT request. These internal communications do not | |

| | |
|---|---|
| have a legend on them. Second Landes Dec. ¶ 18. | |
| 56. There are six topics in E-TRAK, consisting of 20 pages of records, in which there is no legend on the original formal correspondence from JCT. Second Landes Dec. ¶ 18(b) | |
| 57. In five instances, there is a formal letter from JCT to IRS that does not include a legend. Second Landes Dec. ¶ 18(b) | |
| 58. In five of the instances, there is a formal response from IRS to JCT that does not have a legend on it. Second Landes Dec. ¶ 18(b) | |
| 59. In one instance, there is an internal IRS email chain related to the topic; forthis topic, the JCT identified that it accidentally omitted the legend on its formal letter, and re-sent the formal letter to IRS with a legend. Second Landes Dec. ¶ 18(b). | |
| 60. There is one topic in E-TRAK, consisting of 17 pages of records, in which there is a formal response letter from IRS to | |

| | |
|---|---|
| JCT, but the original correspondence from JCT to IRS is not saved in E-TRAK. Second Landes Dec. ¶ 18(c). | |
| 61. For the topic mentioned in paragraph 55, the records in E-TRAK consist of the formal response letter from IRS to JCT, and PDFs of spreadsheets created by the IRS in response to the JCT request. Second Landes Dec. ¶ 18(c). | |
| 62. There are two communications in which IRS sent formal reports to JCT pursuant to its statutory reporting obligations, along with a cover letter and an additional 2-page attachment. Second Landes Dec. ¶ 18(d). | |
| 63. The two communications in which IRS sent formal reports to JCT consist of 31 pages of records. Second Landes Dec. ¶ 18(d). | |
| 64. None of the records in which IRS sent formal reports to JCT include a legend. Second Landes Dec. ¶ 18(d). | |
| 65. There are no responses from JCT or emails related to the two communications in | |

| | |
|---|---|
| which IRS sent formal reports to JCT. Second Landes Dec. ¶ 18(d).. | |
| 66. The two communications in which IRS sent formal reports to JCT are responsive to Item 4 of the First Request. Second Landes Dec. ¶ 18(d). | |
| **EMAIL AND ELECTRONIC FOLDERS OF SCOTT LANDES** | |
| 67. Based on the search of Scott Landes' email and electronic folders, there are 94 topics that are responsive to the records request, consisting of 1,191 pages of records, plus an additional 12 emails. Second Landes Dec. ¶ 19. | |
| 68. There are 35 topics, consisting of 525 pages of emails and attachments of emails, that are internal communications between IRS employees. Second Landes Dec. ¶ 19(a). | |
| 69. All 525 pages consist of communications concerning a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. Second Landes Dec. ¶ 19(a). | |

| | |
|---|---|
| 70. All of these emails were segregated from Scott Landes' regular email and preserved in separate electronic folders reserved for JCT communications. Second Landes Dec. ¶ 19(a). | |
| 71. These emails and attachments are responsive to FOIA Request No. 1, Item 1 as "communications concerning" "records transmitted between the IRS and the JCT" "which do not contain a legend restricting their use or dissemination." Second Landes Dec. ¶ 19(a). | |
| 72. Many of these PDFs consist of repeat email chains. Second Landes Dec. ¶ 19(a). | |
| 73. None of the 525 pages of emails and attachments contain a restrictive legend on the email itself. Second Landes Dec. ¶ 19(a).. | |
| 74. For 25 of the topics (451 pages of emails and attachments), the Service identified a legend on either the original JCT request in E-TRAK or on emails between the IRS and JCT about the JCT request. Second Landes Dec. ¶ 19(a)(i). | |

| | |
|---|---|
| 75. The legend restricts the use and dissemination of these 451 pages of internal IRS emails and attachments. Second Landes Dec. ¶ 19(a)(i). | |
| 76. For 10 of the topics (74 pages of emails and attachments), the Service was unable to identify a legend restricting the use or dissemination of the internal IRS records. Second Landes Dec. ¶ 19 (a)(ii). | |
| 77. The subjects of the 10 topics (74 pages of emails and attachments) all relate to specific JCT oversight inquiries. For the reasons described in the paragraphs above, the Service asserts that all of these records are congressional records not subject to the FOIA. Second Landes Dec. ¶ 19 (a)(ii). | |
| **External Communications between IRS and JCT** | |
| 78. There are 666 pages of emails and attachments that are communications between the IRS and JCT. Second Landes Dec. ¶ 19(b). | |
| 79. All of these emails were segregated from Scott Landes' regular email and | |

| | |
|---|---|
| preserved in separate electronic folders reserved for JCT communications. Second Landes Dec. ¶ 19(b). | |
| 80. Of these records, 59 topics (631 pages) consist of communications concerning a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. Second Landes Dec. ¶ 19(b). | |
| 81. The remaining 35 pages contain either administrative emails or personal emails that do not appear to concern a JCT general oversight inquiry or communications concerning the IRS's statutory reporting requirements to JCT. Second Landes Dec. ¶ 19(b). | |
| 82. All of these emails and attachments are responsive to FOIA Request No. 1, Item 1 as "communications concerning" "records transmitted between the IRS and the JCT" "which do not contain a legend restricting their use or dissemination." Second Landes Dec. ¶ 19(b). | |

| | |
|---|---|
| 83. Many of these PDFs consist of repeat email chains. None of the 666 pages of emails and attachments contain a restrictive legend on the email itself. Second Landes Dec. ¶ 19(b). | |
| 84. For 25 topics (393 pages of emails and attachments), the Service identified a legend on either the original JCT request in E-TRAK or in other related emails between the IRS and JCT about the JCT request. The legend restricts the use and dissemination of these internal IRS emails and attachments. Second Landes Dec. ¶ 19(b)(i). | |
| 85. For the other 34 topics (238 pages of emails and attachments), the Service was unable to identify a legend that restricted the use or dissemination of the internal IRS records. Second Landes Dec. ¶ 19(b)(ii). | |
| 86. The subjects of the 34 topics (238 pages) all concern specific JCT oversight inquiries. Second Landes Dec. ¶ 19(b)(ii). | |
| 87. There are 28 pages of communications that consist of administrative emails between IRS and JCT, that do not appear to concern a | |

| | |
|---|---|
| JCT general oversight inquiry. Second Landes Dec. ¶ 19(b)(iii). | |
| *88.* These 28 pages of emails communicate topics such as employees' schedules and availability for calls/meetings, access to a government building, changes in personnel, and explanations of administrative rules. Second Landes Dec. ¶ 19(b)(iii). ¶ | |
| 89. While these records may not disclose the substantive content of a specific JCT oversight inquiry, the records communicate information that was needed by IRS or JCT employees to accomplish their official responsibilities. Second Landes Dec. ¶ 19(b)(iii). | |
| 90. There are 7 pages of communications that consist of personal emails between the IRS and JCT, that do not appear to concern a JCT general oversight inquiry or administrative matters. Second Landes Dec. ¶ 19 (b)(iv). | |
| 91. These emails communicate information such as personal congratulations, comments about national sporting events, and | |

| | |
|---|---|
| news reports unrelated to the IRS or JCT. Second Landes Dec. ¶ 19 (b)(iv). | |
| 92. For purposes of determining whether the records consisting of 7 pages of communications are personal records not subject to the FOIA, the following facts are relevant: (1) the records are email exchanges between employees of the IRS and the JCT using their official IRS and JCT email addresses; (2) the records are stored in the electronic folders of Scott Landes on his IRS-issued computer; (3) the email records were not used to conduct any IRS or JCT business, nor used for any other IRS or JCT purpose. Second Landes Dec. ¶ 19 (b)(iv). | |
| **<u>Final 12 Emails</u>** | |
| 93. There are 12 emails *from* JCT *to* IRS in response to privileged inquiries from the IRS that are responsive to Item 2 of the First Request (communications between the IRS and JCT concerning any determination whether to disclose or withhold IRS records | |

| | |
|---|---|
| that were the subject of a JCT oversight inquiry). Second Landes Dec. ¶ 19(c). | |
| 94. The records pertain to either: (1) the pre-lawsuit processing of Cause of Action's FOIA requests that are the subject of this lawsuit, or to (2) the Service's proposed revisions to the Chief Counsel Directives Manual and Internal Revenue Manual. Second Landes Dec. ¶ 19(c). | |
| **<u>Exempt Records</u>** | |
| 95. The IRS identified a number of emails and attachments resulting from searches it conducted in this case that were responsive to Category No. 2 of Cause of Action's June 22, 2016 FOIA Request seeking: "All communications between IRS Privacy, Governmental Liaison, and Disclosure ("PGLD") personnel, as well as other affected IRS functions or components, and the JCT concerning any determination to disclose or withhold IRS records that were the subject of a JCT oversight inquiry." Declaration of Kevin E. Cummiskey ("Cummiskey Dec.") ¶ 2. | |

| | |
|---|---|
| 96. The IRS and Cause of Action agreed upon the scope of the searches that located the e-mails. *Id.* | |
| 97. These records pertain to two IRS litigation matters, one regulatory/guidance matter, and the pre-lawsuit processing of Cause of Action's FOIA request that is the subject of this lawsuit. Cummiskey Dec. ¶ 2. | |
| 98. Accordingly, there are 70 emails and attachments at issue. Cummiskey Dec. ¶ 3. | |
| 99. Of the 70 e-mails, 8 are emails and associated attachments from the IRS's attorneys to the JCT responsive to Category No. 2 of Cause of Action's first FOIA request dated June 23, 2016. Cummiskey Dec. ¶ 4. | |
| 100. There are 50 emails between IRS attorneys and employees that are responsive to Category No. 1 of Cause of Action first FOIA request dated June 22, 2016 seeking "All records transmitted between the IRS and the JCT, and all communications concerning such transmissions, which do not contain a legend | |

| | |
|---|---|
| restricting their use or dissemination." Cummiskey Dec. ¶ 6. | |
| **RECORDS EXEMPT FROM DISCLOSURE UNDER EXEMPTION 5: ATTORNEY WORK PRODUCT DOCTRINE** | |
| 101. There are 16 emails and attachments exempt under the work-product privilege. These emails are between IRS counsel, and employees of the IRS's Legislative Affairs Office regarding the processing of Cause of Action's FOIA request that is the subject of this litigation. Cummiskey Dec. ¶ 14. | |
| 102. They contain the thoughts, mental impressions, legal opinions, and strategy of IRS attorneys with respect to the processing of, and response to, Cause of Action's FOIA request. Cummiskey Dec. ¶ 14. | |
| 103. The emails were sent in reasonable anticipation of this litigation, which was filed less than four months later. Cummiskey Dec. ¶ 14. | |
| 104. Document No. 37 is an email dated 6/30/16 from IRS Counsel Charles Pillitteri to Scott Landes requesting that General Counsel | |

| | |
|---|---|
| for the U.S. House of Representatives [redacted] Cummiskey Dec. ¶ 14(a) | |
| 105. Document No. 47 Is an email from IRS Counsel Deborah Lambert-Dean to IRS Counsel Richard Goldman, IRS Counsel Donald Squires, and Scott Landes attaching draft response letter. Cummiskey Dec. ¶ 14(b). | |
| 106. Document Nos. 50-57 are emails from IRS Chief Counsel Attorney Deborah Lambert-Dean to IRS Legislative Affairs employees from 8/4/16 to 8/5/16 reflecting her thoughts, mental impressions, as to [redacted] Cummiskey Dec. ¶ 15(c) | |
| 107. Document Nos 64, 65, 67, 68, 69, and 70 are emails after the second response letter was sent to Cause of Action between IRS Counsel Deborah Lambert-Dean to IRS Counsel Donald Squires and Richard | |

| | |
|---|---|
| Goldman, and Charles Pilliterri copying Scott Landes (IRS Legislative Affairs), and an email to Irma Hinton (IRS Legislative Affairs) containing the attorneys' thoughts, mental impressions, and opinions about [redacted] IRS's response letter to Cause of Action's FOIA request, the progress on [redacted] copies of draft and final correspondence [redacted] and responsibilities of [redacted] with respect to the request. Cummiskey Dec. ¶ 14(d). | |
| 108. The IRS has determined that Disclosure of the above emails would harm the IRS's privileges by eviscerating them. Since these emails contain the work product of IRS attorneys previously assigned to Cause of Action's request that is the subject of this action, disclosure of those emails would waive work product protection for IRS attorneys' work in the weeks and months leading up to this case. Cummiskey Dec. ¶ 15. | |

| | |
|---|---|
| 109. There is no basis for waiving work product in any FOIA case, even for cause. Cummiskey Dec. ¶ 15. | |
| 110. The only matter it would reveal is the IRS's internal analysis about this case. That, in turn, would impede IRS Counsel's ability going forward to engage in "full and frank" communications with its agency client in anticipation of litigation, by making what should be wholly confidential communications available for public consumption. Cummiskey Dec. ¶ 15. | |
| **RECORDS EXEMPT FROM DISCLOSURE UNDER EXEMPTION 5: DELIBERATIVE PROCESS PRIVILEGE** | |
| 111. 27 emails are exempt under the deliberative process privilege. They relate to the processing of Cause of Action's FOIA request that is the subject of this action. Cummiskey Dec. ¶ 17. | |
| 112. Document No. 37 is an email dated 6/30/16 from IRS Counsel Charles Pillitteri to Scott Landes requesting that General Counsel for the U.S. House of Representatives [redacted] | |

| | |
|---|---|
| [redacted] as part of the Internal Revenue Service's decisions about how to process Cause of Action's FOIA request. The sending of the letter [redacted] and it predates both the initial response letter and subsequent response letter reversing the position of the first response letter. Cummiskey Dec. ¶ 17(a). | |
| 113. Document 38 is a 7/25/2016 email from Aaron Edelman (IRS Disclosure) to IRS Ross Kiser (Office of Legislative Affair)s regarding Cause of Action's FOIA request and attaching [redacted] The email is predecisional because the [redacted], it is deliberative because it reflects the opinion and thoughts of the IRS Disclosure | |

| | |
|---|---|
| Office [redacted] Cummiskey Dec. ¶ 17(b). | |
| 114. Document Nos. 39, 40, 43, 44, and 45 are 7/26/2016 emails from Scott Landes to IRS Counsel Richard Goldman forwarding Cause of Action FOIA request and due date for response proposed by IRS Disclosure Office, and emails on 7/27/2016 and 7/28/2016 about the original email between employees of the IRS Office of Legislative Affairs. Cummiskey Dec. ¶ 17(c). | |
| 115. Document No. 41 is an email from Scott Landes to JCT Counsel Norman Brand [redacted] with JCT for the purpose of [redacted] Cummiskey Dec. ¶ 17(d). | |
| 116. Document Nos. 46 is 8/4/2106 email between Legislative Affairs employees discussing FOIA search processes for Legislative Affairs records and their applicability to Cause of Action's request. Id. ¶ 17(e). | |

| | |
|---|---|
| 117. Document No. 47 is an email from IRS Counsel Deborah Lamber-Dean to IRS Counsel Richard Goldman, IRS Counsel Donald Squires, and Scott Landes attaching draft response letter. Cummiskey Dec. ¶ 17(f). | |
| 118. Document No. 48 is an email from PGLD to Legislative Affairs confirming that [redacted] and Document Number 49 is an email from the recipient of the other Legislative Affairs employees informing them of the above. Cummiskey Dec. ¶ 17(g). | |
| 119. Document Nos. 50, 51, 52, 53, 54, 55, 56, and 57 are emails from IRS Chief Counsel Attorney Deborah Lambert-Dean to IRS Legislative Affairs employees on 8/5/16 reflecting her thoughts, mental impressions, about the [redacted] Cummiskey Dec. ¶ 17(h). | |

| | |
|---|---|
| 120. Document Number 58 is an email from IRS Counsel Richard Goldman to IRS Counsel Deborah Lambert-Dean asking for an update [redacted] a copy of the draft letter. Cummiskey Dec. ¶ 17(i). | |
| 121. Document Nos, 59, 60, 61, 62, and 63 are emails between Legislative Affairs' staff regarding [redacted] Cummiskey Dec. ¶ 17(j). | |
| 122. Document No. 66 is an email from Irma Hinton (IRS Legislative Affairs) to Scott Landes creating an ETRAK case number for [redacted] Cummiskey Dec. ¶ 17(k). | |
| 123. The IRS has determined that it would be harmed by the disclosure of these internal deliberations. Cummiskey Dec. ¶ 18. | |

| | |
|---|---|
| 124. Disclosure of the IRS's internal processing of Cause of Action's FOIA request in this case would essentially grant Cause of Action improper and irrelevant discovery in this case. Cummiskey Dec. ¶ 18. | |
| 125. If the IRS's internal deliberations at the administrative stage of a FOIA request's processing became discoverable, IRS disclosure personnel would be impeded from discussing the processing of more complicated requests, with other IRS components and counsel. Cummiskey Dec. ¶ 18. | |
| 126. Indeed, such deliberations happened here: [redacted] Cummiskey Dec. ¶ 18. | |
| ***Records Regarding the Revision of the IRS Chief Counsel Directives Manual and Internal Revenue Manual*** | |
| 127. In 2015, IRS Attorneys conferred internally and with JCT and JCT's counsel regarding the revision of its Chief Counsel Directives Manual ("CCDM") and the Internal Revenue Manual ("IRM") regarding the | |

| | |
|---|---|
| treatment of JCT-related records. Cummiskey Dec. ¶ 19. | |
| 128. The exempt records consist of emails [redacted] Cummiskey Dec. ¶ 20. | |
| 129. Emails between IRS counsel and JCT and House counsel about the IRS's proposed revisions to its Chief Counsel Directives Manual and Internal Revenue Manual are listed below and in Exhibit A. Cummiskey Dec. ¶ 21. | |
| 130. The communications are deliberative because they contain the opinions, ideas, and suggestions of IRS Counsel during the process of revising a policy provision for the Chief Counsel Directives Manual regarding the classification of IRS-JCT communications as congressional records. Cummiskey Dec. ¶ 22. | |
| 131. The deliberative process of these emails began when the IRS received a FOIA request for JCT records. Cummiskey Dec. ¶ 22. | |

| | |
|---|---|
| 132. During the processing of that request, IRS Chief Counsel began to consider revising both the Internal Revenue Manual and the Chief Counsel Directives Manual to make clear how JCT records should be treated in the processing of a FOIA request. Cummiskey Dec. ¶ 22. | |
| 133. It culminated when the final provision was published on December 18, 2015. In the intervening months, IRS Counsel discussed the provision internally [redacted] Cummiskey Dec. ¶ 22. | |
| 134. Document Number 1 is an email from IRS Attorney Charles Christopher regarding [redacted] Cummiskey Dec. ¶ 22(a). | |

| | |
|---|---|
| 135. Document Nos. 8-19 are emails between IRS Counsel Drita Tonuzi, IRS Counsel Richard Goldman, and Scott Landes discussing revision of CCDM [redacted] Cummiskey Dec. ¶ 22(b). | |
| 136. Documents No 29-30, 32, 33, 34, are emails by and between Scott Landes, IRS Counsel Mary Keys, and IRS Counsel Richard Goldman requesting [redacted] email chain discusses proposed revision to IRM and CCDM provisions regarding requests for congressional records, and [redacted] Cummiskey Dec. ¶ 22(c). | |
| 137. Because the policy provisions of the CCDM and IRM are designed to make clear both the IRS and JCT's position about control over such records, the involvement of JCT was | |

| | |
|---|---|
| part and parcel of the IRS's internal deliberative policy-making process, and was not part of a JCT-directed process. Cummiskey Dec. ¶ 23. | |
| 138. Document Nos. 2, 4, 25, 26, 28, 31, 36, and are emails from IRS Counsel Drita Tonuzi and Richard Goldman to JCT attorneys Norman Brand and Deirdre James, and emails sent by Scott Landes to JCT Attorneys on behalf of IRS attorneys [redacted] Cummiskey Dec. ¶ 23(a). | |
| 139. The IRS has determined that disclosure of the IRS's internal deliberations and communications with JCT about the revision | |

| | |
|---|---|
| of the CCDM and IRM would cause foreseeable harm. Cummiskey Dec. ¶ 24. | |
| 140. Specifically, disclosure of these communications would defeat the very purpose of the CCDM and IRM provisions themselves: ensuring that Congress retains control over the disclosure of its own records and the IRS employees treat those records consistent with Congress's control. Cummiskey Dec. ¶ 24. | |
| 141. It would be completely inconsistent with the JCT and IRS's agreed-upon treatment if discussions about the policy itself were disclosed absent Congress's consent. Cummiskey Dec. ¶2 24.. | |
| 142. JCT likely could not even participate in such a deliberation if its communications could be disclosed in response to a FOIA request without its consent. JCT would be left to count on the IRS to implement the policy without JCT's input, which would in turn require the JCT to periodically monitor FOIA requests for its records and intervene if it feels the IRS is | |

| | |
|---|---|
| not protecting JCT's records as it should. Cummiskey Dec. ¶ 25 | |
| 143. Also, the IRS has an interest in maintaining the confidentiality of its assessment of JCT's input as part of its own deliberative process. Were the IRS's internal communications about JCT's input also available to the public, it would impede the IRS's ability to openly and honestly discuss its conversations with JCT. Cummiskey Dec. ¶ 26. | |
| **RECORDS EXEMPT FROM DISCLOSURE UNDER EXEMPTION 5: THE ATTORNEY-CLIENT PRIVILEGE** | |
| 144. The IRS located two emails in its searches that are exempt from disclosure under Exemption 5 because they are communications from IRS Legislative Affairs to IRS Chief Counsel about Cause of Action's FOIA request for the purpose of seeking legal advice about the request. Cummiskey Dec. ¶ 27. | |
| 145. Document Nos. 39 and 43 are July 26, 2016 and July 27, 2016 are email strings from Scott Landes to IRS Counsel Richard Goldman sending Cause of Action's FOIA requests. The | |

| | |
|---|---|
| email seeks legal advice [redacted] Cummiskey Dec. ¶ 27. | |
| 146. The IRS has determined that disclosure of these privileged communications seeking IRS Counsel's legal advice about the processing of Cause of Action's request would cause foreseeable harm. Specifically, these communications were to seek legal advice specifically about the requests and issues being litigated in this case, and disclosure would waive privilege over the legal advice in this case. This in turn would impair the IRS's ability to communicate confidentially with its internal counsel. Cummiskey Dec. ¶ 28 | |
| **REPORTS UNDER 26 U.S.C. § 6103(P)(3) ARE RECORDS THAT ONLY JCT HAS THE AUTHORITY TO MAKE PUBLIC** | |
| 147. The Service is not releasing reports that it is required to provide to JCT under Title 26 of the Internal Revenue Code, 26 | |

| | |
|---|---|
| U.S.C.§ 6103(p)(3)(B) or (C). Cummiskey Dec. ¶ 29. | |
| 148. Under 26 U.S.C. § 6103(p), the IRS is required to make a limited disclosure of providing two reports only to the JCT within ninety days of the end of each calendar year. Cummiskey Dec. ¶ 30. | |
| 149. First, the Secretary of the Treasury "shall, within 90 days after the close of each calendar year, furnish to the [JCT] a report with respect to, or summary of" its "records and accountings of all requests for inspection or disclosure of returns and return information" under certain provision of Section 6103. I.R.C. § 6103(p)(3)(A)-(B). Cummiskey Dec. ¶ 31. | |
| 150. Only JCT may disclose reports under 6103(p)(3)(B) to other persons only "by record vote of a majority of [its] members." I.R.C. § 6103(p)(3)(B). Cummiskey Dec. ¶ 32. | |
| 151. The IRS is also required to "furnish to [JCT] for disclosure to the public a report . . . (i) provid[ing] the number of – (I) requests for | |

| | |
|---|---|
| disclosure of returns and return information, (II) instances in which returns and return information were disclosed pursuant to such requests or otherwise, (III) taxpayer whose returns, or return information with respect to whom, were disclosed pursuant to such requests, and (ii) describes the general purposes for which such requests were made." 26 U.S.C. § 6103(p)(3)(C). Cummiskey Dec. ¶ 33. | |
| 152. The 6103(p)(3)(C) report is not made public until JCT later publishes it on its website. Once the JCT publishes the report, the IRS links to the JCT's website in its electronic reading room. Cummiskey Dec. ¶ 34. | |

Dated: September 26, 2025

*/s/ Ryan O. McMonagle*
RYAN O. MCMONAGLE
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Washington, D.C. 20044
(202) 307-1355
(202) 514-6866 (facsimile)
Ryan.McMonagle@usdoj.gov

*Attorneys for the Internal Revenue Service*